**Scott ROBINSON, M.D., Appellant–Plaintiff,**

v.

**INDIANA UNIVERSITY, Indiana University–Purdue University at Indianapolis, Indiana University School of Medicine, The Indiana University–Purdue University at Indianapolis Animal Care and Use Committee, School of Medicine Subcommittee of the Indiana University–Purdue University at Indianapolis Animal Care and Use Committee, Appellee–Defendant.**

No. 49A02–9306–CV–253.

Court of Appeals of Indiana, Second District.

July 21, 1994.

Rehearing Denied Sept. 8, 1994.

Beth Robinson, Langrock Sperry & Wool, Middlebury, VT, Jay D. Robinson, Jr., Indianapolis, for appellant.

Albert J. Velasquez, Bloomington, for appellee.

FRIEDLANDER, Judge.

Dr. Scott Robinson (Robinson) appeals the trial court's order entering judgment in favor of Indiana University (I.U.) which determined that Robinson was prohibited from attending meetings of I.U.'s Animal Care Committee in accordance with Ind.Code 5–14–1.5–1 *et seq.* [hereinafter referred to as the Open Door Law], and that a number of Robinson's requests for information regarding various animal research projects being conducted by I.U. were not subject to the provisions of IC 5–14–3–3 [hereinafter referred to as the Public Records Act].

We affirm in part and remand in part.

The facts most favorable to the judgment are that Robinson sought a declaration that various meetings of the Indiana University–Purdue University at Indianapolis Animal Care Committee (the Committee) and of the School of Medicine Subcommittee of that committee (the Subcommittee) were open to the public in accordance with the Open Door law. Robinson also asserted that certain records of those committees were subject to public disclosure pursuant to the Public Records Act. Robinson further sought to enjoin I.U. from alleged continuing violations of the Open Door Law and the Public Records Act.

Over the past five years, the committees have reviewed 1,979 research and education projects involving the use of animals. These projects were conducted by 535 investigators. In response to Robinson's request to attend the meetings and for copies of various documents, I.U. provided partial or complete responses to his inquiries. I.U. declined to provided minutes of the Committee and Subcommittee meetings as well as information which pertained to particular research projects contained in the Committee files.

Robinson filed a motion for summary judgment and to compel the production of various

records for in camera inspection by the trial court. After extensive briefing and argument by the parties, the trial court granted summary judgment for I.U. and entered final judgment in I.U.'s favor. In relevant part, the order provided as follows: .

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that there are no genuine issues of material fact in relation to the issues raised in this litigation and that the grant of summary judgment for the Defendants is appropriate and is hereby ordered. Judgment is entered for the Defendants and against Plaintiff on both Counts I and II of Plaintiff's Complaint, the Court declaring that within the context of the issues and pertinent facts of this lawsuit, the meetings of the Committee and Subcommittee are not subject to the provisions of the Indiana Open Door Law (Ind.Code § 5–14–1.5–1 et seq.) nor their research records subject to the Public Records Law (Ind.Code § 5–14–3–1 et seq.)."

*Record* at 757.

Robinson appeals and presents the following issues:

I. Were the meetings of the Committee and Subcommittee subject to the provisions of the Open Door Law?

II. Were the animal care and use applications, which were submitted to the Committee and Subcommittee, exempt from disclosure under the Public Records Act?

### I.

■ The trial court properly entered judgment in favor of I.U., inasmuch as the Committee and Subcommittee meetings were not subject to the Open Door Law.

The Open Door Law provides that except for those situations where an executive session is authorized, "all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." IC 5–14–1.5–3. The legislature expressed its intent "that the official action of public agencies be conducted and taken openly," and that the provisions of the Open Door Law "be liberally construed with

the view of carrying out its policy." IC 5–14–1.5–1. Robinson argues that he should be permitted to attend the Committee and Subcommittee meetings, inasmuch as the Open Door Law applies to "all meetings of the *governing bodies of public agencies*." IC 5–14–1.5–3 (emphasis supplied).

Robinson maintains that the Committee and Subcommittee are "governing bodies" of I.U. in light of the following language of the Open Door Law:

" '[G]overning bodies' means two (2) or more individuals who are:

. . .

(3) any committee appointed *directly by the governing body* or its presiding officer to which authority to take official action upon public business has been delegated."

IC 5–14–1.5–2(b) (emphasis supplied).

Contrary to Robinson's argument, the Committee and Subcommittee do not derive their existence directly from the I.U. Board of Trustees (the Board). Rather, as Robinson concedes, the Board delegates its duty of assuring that I.U. complies with applicable laws to various other offices. The appointment of the committees is interrupted by several steps, through several individuals.

In accordance with I.U.'s custom and practice, the Board delegates the duty to appoint the committees to the university president who, in turn, passes the duty on to an associate vice president for research. The associate vice president then delegates the duty to each of the several campus chancellors, and it is they who ultimately appoint the campus committees and subcommittees.

In support of Robinson's argument, he relies upon *Riggin v. Board of Trustees of Ball State Univ.* (1986), Ind.App., 489 N.E.2d 616 which determined that Ball State could not escape the operation of the Open Door law merely by appointing a committee to appoint a committee, which would then appoint yet another committee to conduct a hearing.

In *Riggin*, Ball State's board of trustees had established a university senate to advise the Board with respect to faculty employment issues. Riggin was a business professor who was being investigated by the Uni-

versity. Following a number of preliminary proceedings, Riggin was afforded a hearing before an *ad hoc* committee which had been selected by the president of the senate from members of the Ball State Senate Judicial Committee, which was a standing committee elected by the Senate.

This court rejected Ball State's argument that because the board of trustees did not *itself* appoint the *ad hoc* committee, the committee failed to qualify as a "governing body" within the meaning of the Open Door Law. This court determined that the Open Door Law applied to the committee even though its authority derived from the board of trustees as a result of several delegations.

Judge Neal, in writing for the majority, observed that:

> "It is our view that the Act is massive and all inclusive by itself, and needs no expansion by us. While we may have sympathy for Ball State, and for amicus curiae Indiana State University, and though we may even agree that the law is too broad, cumbersome and unwieldy, and that it imposes time consuming and expensive labors on persons who effect decisions on trivial matters of little public interest, *our function is not to judge the wisdom of the Act, but only its meaning. Ball State's argument should be addressed to the legislature.*"

*Riggin* at 623 (emphasis supplied).

When *Riggin* was decided, the definition of "governing body" did not include the word "directly" in subsection (b) of the Open Door law quoted above. Rather, the statute only contained the following language: " 'governing body' ... includes *any committee appointed by the governing body* ...." IC 5–14–1.5–2(b). At the very next session of the General Assembly, the legislature amended this portion of the Open Door Law and specified that only those committees "directly" appointed by the governing body or its presiding officer are required to hold open meetings.

It is apparent to us that the legislature's enactment of the amendment effectively limits the types of committees that are subject to the Open Door Law. We do not agree with Robinson's contention that this amendment to the statute amounted to a mere "cosmetic and stylistic" cleaning up of the statute. We are persuaded that this change indicates the legislature no longer intended for the construction of the term "committee," discussed in *Riggin*, to persist. The legislature has clearly narrowed the scope of the Open Door Law's effect as it applies to various committees.

■ As discussed above, the Committee and Subcommittee did not derive their authority *directly* from the governing body. The trial court therefore correctly determined that the Open Door Law did not apply, and Robinson was properly excluded from the committee meetings.

## II.

■ We must remand this cause to the trial court inasmuch as certain relevant information is not before this court which would permit us to conduct a meaningful review of the trial court's conclusion that the animal care and use applications submitted to the Committee and Subcommittee "concerned research" under the Public Records Act.

The Public Records Act provides that "[a]ny person may inspect and copy the public records of any public agency during the regular business hours of the agency." Ind. Code 5–14–3–3(a). This right, however, is not without exception:

> "The following public records are excepted from section 3 of this chapter and may not be disclosed by a public agency, unless access to the records is specifically required by state or federal statute or is ordered by a court under the rules of discovery:
>
> . . .
>
> (6) *Information concerning research (including actual research documents) conducted under the auspices of an institution of higher education,* including information:
>
> (A) concerning any negotiations made with respect to the research; and

(B) received from another party involved in the research."

IC 5–14–3–4(a) (emphasis supplied).

I.U. bears the burden of proof to sustain the denial of an individual's request to review its records, and a trial court may conduct an *in camera* inspection of a record to determine whether any part of the request may be denied. IC 5–14–3–9(e), (g). Counsel for I.U. responded to Robinson's request for various documents as follows:

"We have spent a great deal of time reviewing your client's requests for records to identify information that can be provided without releasing confidential information concerning research. If the information requested is only available as a part of individual research projects, it has not been provided. It is our position that your client may not review individual research protocols and applications to compile the statistics he is requesting."

*Record* at 34.

The record before us reveals that Robinson requested the trial court to conduct an *in camera* review of the applications regarding a sampling of ten specified research projects. This motion was apparently denied, as the record does not demonstrate what documents I.U. actually submitted to the trial court and what was received and reviewed. I.U. then moved to supplement the record with computerized printouts containing a *brief description* of the 1,979 research and education projects involving the use of animals over a five-year period. The trial judge subsequently returned the documents which had been submitted to him, under seal, to I.U.

Following a hearing on Robinson's motion for summary judgment, the trial court determined that it was appropriate to enter summary judgment, as well as final judgment, in favor of I.U. for the reason that "[the] research records [were not] subject to the Public Records Law." *Record* at 757.

█ There is nothing contained in the trial court's judgment for I.U. that enables us to review the correctness of the judgment in regards to Robinson's request under the Public Records Act. Our supreme court has observed that we may issue *sua sponte* a writ of certiorari in order to complete a record upon appeal. *Salk v. Weinraub* (1979), 271 Ind. 115, 390 N.E.2d 995. When necessary findings are lacking, this court may exercise its discretion and remand the case to the trial court for entry of appropriate findings of fact and conclusions of law. The appeal may then be held in abeyance until the findings are made and certified to the Clerk of this court. *Id.*

Because we are unable to review the propriety of the judgment as it pertains to Robinson's request, we hereby order that this cause be remanded to the Marion Superior Court, the Honorable Kenneth H. Johnson, Judge, for entry of special findings of fact and conclusions of law in support of its judgment as it relates to the Public Records Law. These findings shall be filed within thirty days of receipt of this opinion, and shall encompass the relevant ultimate facts shown by the record upon the issues that Robinson presents regarding the Public Records Act. We suggest that the trial court invoke Ind. Rules of Procedure, Trial Rule 52(C) and require the parties to submit proposed findings of fact and conclusions.

Upon entry of such findings, the clerk of the Marion county Superior Court shall certify them to the Clerk of this court. Those findings, upon certification and receipt, shall become a part of the record in this cause. This appeal, as to Issue II, shall be held in abeyance pending the filing of such findings.

The judgment is hereby affirmed with respect to Issue I, and this cause is remanded to the trial court with instructions that specific findings of fact and conclusions of law be entered in regard to Issue II, and for further proceedings consistent with this opinion.

HOFFMAN, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I do not agree that the Indiana Legislature narrowed the scope of the Open Door Law by the use of the word "directly." *Riggin v. Board of Trustees of Ball State Univ.* (1986), Ind.App., 489 N.E.2d 616 still applies to the

appeal at hand. If the Open Door Law is to be amended to fit the shoes of this appeal, it will take more than the word "directly" to accomplish the task. The statute will need a complete overhaul of its intent and purpose.