Bernard G. **FRYE** and Lyman Roberts Jr., **Appellants–Plaintiffs,**

v.

**VIGO COUNTY, Judy Anderson, et al., Appellees–Defendants.**

No. 83A01–0107–CV–246.

Court of Appeals of Indiana.

June 4, 2002.

Bernard G. Frye, Lyman Roberts Jr., Terre Haute, IN, Appellants pro se.

Frederick T. Bauer, Terre Haute, IN, Attorney for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Bernard G. Frye and Lyman Roberts Jr. (collectively, the "Citizens") appeal the trial court's judgment denying their re-quested relief for alleged violations of the Indiana Open Door Law[1] by the Vigo County Commissioners (the "Commissioners") and the Grievance Panel.[2] The Citizens raise numerous issues for our review which we consolidate and restate as: 1) whether the trial court erred in finding there was public notice of executive sessions, 2) whether the Commissioners improperly met in executive sessions with the county attorney and union representatives, 3) whether the trial court erred in determining the Grievance Panel meetings were not subject to the Open Door Law, and 4) whether the trial court erred in not providing the Citizens with a remedy.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

Roberts' employment with the Vigo County Highway Department was terminated by the Commissioners on September 9, 1998, at a meeting closed to the public. The Commissioners acted due to allegations that Roberts had sexually harassed a female employee. The collective bargaining agreement between the Commissioners and the International Union of Operating Engineers Local #841C ("Union") set forth a grievance procedure that provided Roberts with a process to appeal the Commissioners' termination decision.

Pursuant to Step III of the grievance procedure, Roberts notified the Commissioners that he desired to appeal the Commissioners' decision. On September 28, 1998, the Commissioners met with Roberts in accordance with Step III to review Roberts' termination, heard evidence from witnesses concerning the alleged misconduct,

---

1. Ind.Code § 5–14–1.5–1 *et seq.*

2. The trial court dismissed County Attorneys Lynn Francis and Craig McKee from this suit.

and issued a decision upholding the termination.

Roberts next initiated Step IV of the grievance procedure which states in pertinent part:

> The Commissioners, upon official receipt of written notification that the Complainant is not satisfied with the decision of the Commissioners, shall convene an impartial panel within five (5) days to hear the grievance and appeal. This panel shall consist of three (3) members: the County Auditor, and two other officeholders or County officials mutually acceptable to the Commissioners and the Complainant. The other officials may be elected officials, chief deputies, department heads or County employees with supervisory authority. All three (3) panel members must be in attendance at the hearing.

(Appellee's App. at 31–32.) As set forth in the trial stipulation file marked March 9, 2001:

> The then Vigo County Auditor, Defendant Judy Anderson, was named to the Grievance Panel by virtue of her office as required by Step IV and the then Vigo County Recorder, Defendant Paul Mason; and Otter Creek Township Trustee, Defendant Betty Easthom, were named to the Grievance Panel by agreement of the Vigo County Commissioners and Lyman Roberts, Jr. in accordance with the requirements of Step V [sic] of the Grievance Procedure.

*Id.* at 29.

The Grievance Panel met on October 28, 1998, to consider Roberts' grievance. It was stipulated at trial that "[t]he meeting was conducted as an Executive Session. No notice was given of said meeting. No agenda was posted. No minutes were kept and no memoranda were kept." *Id.* The Grievance Panel met again on November 2, 1998, and upheld the Commission-

ers' termination of Roberts' employment. It was also stipulated at trial that this meeting was held in executive session without public notice, with no agenda posted, and with no minutes or memoranda kept.

The parties also stipulated to the following concerning the annual notice of the Commissioners' meetings:

> That, as required by the Indiana Open Door Law, the Vigo County Commissioners published notice regarding their regular meetings in accordance with the provisions of I.C. 5–14–1.5–5(c), which said notice was published on or about December [25], 1997, in the *Terre Haute Tribune,* a newspaper of general circulation in Vigo County, Indiana, advising the public of its intent to meet at 10:00 a.m. Eastern Standard Time on January 5, 1998, in the Vigo County Commissioners Courtroom, Vigo County Annex Building, 201 Cherry Street, Terre Haute, Indiana, and, further, of its intent to continue to meet in daily session and each working day of the year 1998 with all sessions being open to the public.

*Id.* at 30 (emphasis in original).

The trial court in its ruling found that this annual notice was sufficient notice of the September 9, 1998, meeting that was closed to the public, and that the Commissioners could meet in executive session to hear information about Roberts' alleged misconduct. However, the trial court held the final action of terminating Roberts' employment in a closed meeting violated the Open Door Law. The trial court did not find any violations of the Open Door Law regarding the Commissioners' September 28th meeting upholding Roberts' termination.

The trial court also found that the Open Door Law did not apply to the Grievance

Panel meetings because the Grievance Panel was not "directly appointed" by the Commissioners. Id. Despite finding that the Commissioners' final action of terminating Roberts in a closed meeting on September 9, 1998, violated the Open Door Law, the trial court upheld the Commissioners' action of terminating Roberts' employment. The trial court denied the Citizens' request for a declaratory judgment, injunctive relief, and damages. This appeal ensued.

## STANDARD OF REVIEW

■ An appeal from a negative judgment determines the standard of review by this Court. *Town of Merrillville v. Blanco*, 687 N.E.2d 191, 195 (Ind.Ct.App.1997), *trans. denied, citing Pepinsky v. Monroe County Council*, 461 N.E.2d 128, 135 (Ind. 1984). We will not reverse the judgment of the trial court unless it is contrary to law. *Id.* In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the appellee together with all the reasonable inferences to be drawn therefrom. *Id.* The judgment will be reversed only if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id.*

## DISCUSSION AND DECISION

■ The purpose of the Indiana Open Door Law is to assure that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed. *Baker v. Town of Middlebury*, 753 N.E.2d

67, 70 (Ind.Ct.App.2001), *reh'g. denied, trans. denied;* Ind.Code § 5–14–1.5–1. We are required to liberally construe the statute in order to give effect to the legislature's intention. *Id.* Unless an exception applies, "all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." Ind.Code § 5–14–1.5–3(a). All doubts must be resolved in favor of requiring a public meeting and all exceptions to the rule requiring open meetings must be narrowly construed with the burden of proving the exception on the party claiming it. *Baker*, 753 N.E.2d at 70.

■ Section 6.1 of the Open Door Law permits executive sessions in certain specified instances including receiving information about an employee's alleged misconduct and to discuss, before a determination,[3] the employee's employment status. Ind.Code § 5–14–1.5–6.1(b)(6). An "executive session" is defined as "a meeting from which the public is excluded, except the governing body may admit those persons necessary to carry out its purpose." Ind.Code § 5–14–1.5–2(f). The only official action that cannot take place in executive session is a final action which must take place at a meeting open to the public. *Baker*, 753 N.E.2d at 71 *citing* Ind.Code § 5–14–1.5–6.1(c). A "final action" is defined as "a vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order." Ind.Code § 5–14–1.5–2(g).

---

**3.** The Citizens cite to Ind.Code § 5–14–1.5–6.1(b)(6) for the proposition that since the September 9th meeting terminating Roberts' employment was a final action, all subsequent meetings involving Roberts' employment status must be conducted in open session. We do not agree. The "before a determination" phrase contained in the statute does not pre-

vent the Commissioners from meeting in executive session to receive additional information about Roberts' alleged misconduct and discuss his employment status prior to a determination on whether the previous decision terminating Roberts' employment should be upheld or reversed.

### 1. *Public Notice*

█ The Citizens argue the trial court erred in determining that the annual notice published in the newspaper was sufficient notice of the September 9th executive session meeting terminating Roberts' employment and the September 28th executive session meeting upholding the termination. Section 5 of the Open Door Law, requiring public notice of meetings, provides in pertinent part that:

(a) Public notice of the date, time, and place of any meetings, executive sessions, or of any rescheduled or reconvened meeting, shall be given at least forty-eight (48) hours ... before the meeting.

\* \* \*

(b) Public notice shall be given by the governing body of a public agency by:

(1) posting a copy of the notice at the principal office of the public agency holding the meeting or, if no such office exists, at the building where the meeting is to be held; and

(2) depositing in the United States mail with postage prepaid or by delivering notice to all news media which deliver by January 1 an annual written request for such notices for the next succeeding calendar year to the governing body of the public agency.

\* \* \*

(c) Notice of regular meetings need be given only once each year, except that an additional notice shall be given where the date, time, or place of a regular meeting or meetings is changed. *This subsection does not apply to executive sessions.*

(Emphasis added.)

The trial court determined that the annual notice published in the newspaper was sufficient public notice of the September 9th and 28th executive session meetings. However, annual notice is sufficient only for regular meetings. Subsection (c) clearly states that the annual notice provision does not apply to executive sessions. Additionally, section 6.1(d) of the Open Door Law provides that:

(d) Public notice of executive sessions must state the subject matter by specific reference to the enumerated instance or instances · for which executive sessions may be held under subsection (b). The requirements stated in section 4 of this chapter for memoranda and minutes being made available to the public is modified as to executive sessions in that the memoranda and minutes must identify the subject matter considered by specific reference to the enumerated instance or instances for which public notice was given. The governing body shall certify by a statement in the memoranda and minutes of the governing body that no subject matter was discussed in the executive session other than the subject matter specified in the public notice.

The annual notice relied on by the trial court does not meet the requirements for notice of an executive session. The trial court abused its discretion in finding there was sufficient public notice of the Commissioners' September 9th and 28th executive session meetings concerning Roberts' employment status.[4]

---

4. We note the trial court also considered whether the September 9th and 28th meetings could be held as "administrative functions." As neither party has raised this issue, we decline to evaluate what is or is not an administrative function for purposes of the Open Door Law. We discuss this matter only as an attempt to resolve an apparent inconsistency in the trial court's decision.

In evaluating the September 9th meeting, the trial court quoted Section 5 of the Open Door Law entitled "Public notice of meetings" which provides in part:

(f) This section shall not apply to:

### 2. *County Attorney and Union Representatives*

■ The Citizens argue the Commissioners improperly met in executive sessions with county attorney Lynn Francis because Francis was contacted by phone during the September 9th meeting at which Roberts was terminated and because Francis was present at the September 28th meeting.[5] Executive sessions may be held only for one of the specified instances set forth in Ind.Code § 5–14–1.5–6.1(b). One of the specified instances

* * *

(2) the executive of a county or the legislative body of a town if the meetings are held solely to receive information or recommendations in order to carry out administrative functions, to carry out administrative functions, or confer with staff members on matters relating to the internal management of the unit. "Administrative functions" do not include the awarding of contracts, the entering into contracts, or any other action creating an obligation or otherwise binding a county or town.

The trial court then stated:

[t]he Commissioners as the County Executive Officer could carry out an administrative function without being subject to the Open Door Laws. This provision arguably is in conflict with the requirement that a final action must be taken in an open meeting. In construing the Open Door Law statutes in total and keeping in mind the purpose of the Open Door Law, this Court holds that the act of terminating an employee is a final act, which must occur in an open meeting and is not an administrative function that can be carried out in a closed meeting.

(Appellee's App. at 14.) However, the trial court went on to find that at the September 28th meeting "the Commissioners heard evidence from witnesses again about alleged misconduct, which could be done in an executive session or as an administrative function." *Id.* at 15.

Section 5(f)(2) allows meetings to be held without complying with the public notice requirements to receive information in order to carry out administrative functions. However, if termination of an employee is not an administrative function, then the Commission-

when it is proper to hold an executive session is for discussion of strategy with respect to the initiation of litigation or litigation that is either pending or has been threatened specifically in writing. Ind.Code § 5–14–1.5–6.1(b)(2)(B). The Citizens cite to *Simon v. City of Auburn, Ind., Bd. of Zoning Appeals*, 519 N.E.2d 205, 211 (Ind.Ct.App.1988), where this court held that under the Open Door Law it was improper for a majority of the members of the Auburn Board of Zoning Appeals to meet privately with an attorney to seek legal advice about a zoning matter

ers could not hear testimony in order to carry out the termination of an employee as an administrative function either. Therefore, the administrative function exception to public notice of meetings does not apply to the September 28th meeting. To the extent the trial court found that the September 28th meeting could be held as an administrative function, we disagree as that finding is contrary to the trial court's holding that the termination of an employee is not an administrative function.

Additionally, we note that the "administrative function" exception provides only an exception to giving public notice of meetings, it does not provide an exemption from the entire Open Door Law as the trial court stated. *See* Ind.Code § 5–14–1.5–5(f)(2).

5. The Citizens make numerous assertions that are not supported by the record concerning Francis' involvement in these meetings. The Citizens rely in part on Francis' affidavit and a trial stipulation signed March 23, 2001, neither of which are found in the record on appeal. We note that the Citizens did not file an Appendix. Matters outside the record cannot be considered by this court on appeal. *Rothschild v. Devos*, 757 N.E.2d 219, 221 n. 2 (Ind.Ct.App.2001). We must decide the case on the record before us and cannot speculate as to the actual facts of a case. *Id.*

The Citizens also assert that the Commissioners violated the Open Door Law by failing to post agendas and keep proper minutes and memoranda of their meetings. However, we are unable to review these alleged violations as the record is devoid of any facts concerning these alleged violations.

which was not litigation-related. The Citizens appear to argue that because litigation was not an issue at the time the meetings were held, it was improper for the Commissioners to meet with an attorney.

The Citizens' argument is misplaced. The Citizens ignore the fact that executive sessions may also properly be held to receive information concerning an individual's alleged misconduct and to discuss that individual's status as an employee. Ind. Code § 5–14–1.5–6.1(b)(6). Although the meeting is closed to the public, persons necessary to carry out the purpose of an executive session may also be admitted. Ind.Code § 5–14–1.5–2(f). This does not exclude attorneys. Francis' involvement in the September 9th and 28th executive session meetings concerning Roberts' alleged misconduct and status as an employee does not automatically violate the Open Door Law simply because Francis is an attorney.

■ In a similar vein, the Citizens argue the Open Door Law was violated by allowing representatives from Roberts' union to be present at the September 9th and 28th executive session meetings because the union representatives were "bargaining adversaries." The Citizens cite to Ind. Code § 5–14–1.5–6.1(b)(2) which provides that executive sessions held for strategy discussions with respect to collective bargaining may not include competitive or bargaining adversaries. Once again, the executive sessions in this case were held pursuant to 5–14–1.5–6.1(b)(6) concerning Roberts' alleged misconduct and his status as an employee. Union representatives

are not prohibited from attending such meetings.

### 3. *Directly Appointed*

■ The Citizens argue the trial court erred in finding that the Grievance Panel meetings were not subject to the Open Door Law. The Citizens argue the Open Door Law applied to the Grievance Panel meetings because the Commissioners directly appointed the Grievance Panel.[6] The Open Door Law applies to "any committee *appointed directly* by the governing body or its presiding officer to which authority to take official action upon public business has been delegated." Ind.Code § 5–14–1.5–2(b)(3) (emphasis added).

Therefore, if the Grievance Panel was not appointed directly by the Commissioners, the Open Door Law does not apply to the Grievance Panel meetings. *See Robinson v. Indiana University*, 638 N.E.2d 435, 438 (Ind.Ct.App.1994). The trial court found the Grievance Panel was not directly appointed by the Commissioners; rather, the Grievance Panel was "appointed pursuant to the Grievance Procedure with Roberts having a hand in appointing two of the three member panel." (Appellee's App. at 16.)

In *Robinson*, a panel of this court held that meetings of Indiana University's Animal Care Committee and Subcommittee were not subject to the Open Door Law because the Committee and Subcommittee did not derive their authority directly from the Indiana University Board of Trustees (the Board). 638 N.E.2d at 438.

The appointment of the committees is interrupted by several steps, through

---

**6.** The Citizens argue the trial court erred in refusing to admit into evidence a letter from the Commissioners to another employee who had filed a grievance, which the Citizens apparently offered to demonstrate the Commissioners "implemented the [Grievance] Panel." (Br. of Appellant at 24.) This allegation of

error, however, is not supported with citation to any authority, nor do the Citizens even attempt to explain why it was erroneous for the trial court not to admit the letter. The Citizens have waived this allegation of error by failing to present a cognizable argument. Ind. Appellate Rule 46(A)(8)(a).

several individuals.... [T]he Board delegates the duty to appoint the committees to the university president who, in turn, passes the duty on to an associate vice president for research. The associate vice president then delegates the duty to each of the several campus chancellors, and it is they who ultimately appoint the campus committees and subcommittees.

*Id.* at 437.

Unlike the committees and subcommittees in *Robinson,* the appointment of the Grievance Panel was not a result of successive delegations of authority several steps removed from an initial delegation by the Commissioners. Rather, the Grievance Panel was appointed pursuant to the grievance procedure contained in the collective bargaining agreement between the Commissioners and the Union due to Roberts' appeal of the Commissioners' decision upholding his termination. Although the collective bargaining agreement requires the Commissioners to "convene" the panel, the Grievance Panel does not derive its authority directly from the Commissioners. As a result of the Union's role in the collective bargaining agreement and Roberts' involvement in the appointment of two of the Grievance Panel members, we cannot say that the Grievance Panel was appointed directly by the Commissioners. Therefore, the Open Door Law does not apply to the Grievance Panel meetings.[7]

### 4. *Remedy*

■■■■ The Citizens argue the Commissioners' decision to terminate Roberts'

employment should be declared void due to the violations of the Open Door Law.[8] Whether to declare void any policy, decision, or final action taken by a public agency in violation of the Open Door Law is a matter left to the trial court's discretion. *Town of Merrillville,* 687 N.E.2d at 199. Among the factors the trial court considers in reaching this determination are: 1) the extent to which the violation affected the substance of the action, denied or impaired access to any meetings that the public had a right to observe, and prevented or impaired public knowledge or understanding; 2) whether voiding of the action is a necessary prerequisite to a substantial reconsideration of the subject matter; and 3) the balancing of the remedial benefits gained by effectuating the public policy of the state declared in the "Purpose" section of the Open Door Law against the prejudice likely to accrue to the public if the action is voided (including the extent to which persons have relied upon the validity of the challenged action). *Id.;* Ind.Code § 5–14–1.5–7(d)(1)–(3).

The only violation of the Open Door Law found by the trial court was the final action of terminating Roberts' employment at the September 9th executive session. *See Baker,* 753 N.E.2d at 71 (final action must take place at a meeting open to the public). The trial court evaluated this violation in terms of the factors set forth in the statute and concluded that the Commissioners' decision to terminate Roberts' employment should not be declared void.[9] Contrary to the Citizens' apparent belief,

---

7. Since the Open Door Law does not apply to the Grievance Panel meetings, we accordingly decline to address the Citizens' numerous alleged violations of Open Door Law concerning these meetings.

8. At trial, the Citizens also requested a declaratory judgment, injunctive relief, and damages. However on appeal, the Citizens make

no argument concerning the trial court's denial of these other requested remedies other than to assert without explanation that Roberts should receive damages.

9. The Citizens contend the trial court erred in considering the reason for Roberts' termination. The Citizens' entire argument con-

the trial court could properly uphold the Commissioners' decision to terminate Roberts' employment despite finding a violation of the Open Door Law,

██ However, as stated previously, the trial court erred in determining that the annual notice was sufficient public notice of the executive session meetings. Furthermore, the trial court failed to take into account the Commissioners issuing an order during the September 28th closed meeting upholding their decision to terminate Roberts' employment. The trial court erred by not considering these additional violations of the Open Door Law in determining whether to void the Commissioners' final action. The trial court must now evaluate whether the failure to give public notice of the executive sessions combined with the Commissioners' taking final action in the September 9th and 28th executive sessions are sufficient to require that the Citizens be given a remedy. We admonish the Commissioners against holding future meetings in violation of the Open Door Law. Further, on remand, we direct the trial court's attention to section 7(a)(2) of the Open Door Law, which gives it the authority to enjoin the Commissioners from future violations if, in the trial court's opinion, an injunction is necessary to assure that the Commissioners will comply with the Open Door Law in the future.

Reversed and remanded.

NAJAM, J., concurs.

BAKER, J., concurring with separate opinion.

BAKER, J., concurring with separate opinion.

I concur fully with the majority's opinion but write separately to emphasize that Roberts raised the issue of Open Door violations at the closed meetings on September 9 and 28 and again before the trial court. Had Roberts failed to object to obvious violations of the Open Door law *at the meeting in question*, then he would not be heard to later complain that such procedures were neglected to the detriment of the public. This standard advances the stated purpose of the Open Door law: "It is the intent of [the Open Door law] that the official action of public agencies be conducted and taken openly, unless otherwise expressly provided by statute, in order that the people may be fully informed." Ind.Code § 5–14–1.5–1. On the whole, such a standard encourages compliance with Open Door procedures by insuring that parties raise objections in order to correct potential violations.

It is also a tenet of sound adjudication that a party may not take advantage of an error he has waived. *See, e.g., Jolly v. Modisett*, 257 Ind. 426, 429, 275 N.E.2d

---

cerning the contention that the trial court erred in considering the reason for Roberts' termination is as follows:

> the [trial] Court's discussion in it's [sic] Order of May 2, 2001, of the alleged acts of sexual harassment by Plaintiff Roberts should not be considered or even mentioned in the Court's Order since such determination should be up to the Vigo County Board of Commissioners *at a properly noticed* OPEN MEETING. The Court is in error saying (page 11) in its Order that "... (Commissioners found Roberts touched and detained a female employee against her

will). Roberts does not claim his firing was for an improper reason or even that there was insufficient evidence for the firing." but, because the meeting was illegal (TR. P. 10 Line 10–16): (TR.P. 39 Line 21–24): (TR. P. 85 Line 19–23).

(Br. of Appellant at 22) (emphasis in original). This alleged error is not supported by explanation or citation to legal authority. The Citizens do not make a cognizable argument in support of their contention. Therefore this alleged error is waived. Ind. Appellate Rule 46(A)(8)(a).

780, 782 (1971) ("[T]o permit a party to submit his cause and await the decision of the trial judge beyond the ninety day period, without taking the steps available to him to effect a withdrawal of the submission and then to deny the jurisdiction, if and when the decision goes against him, would be to permit him to take advantage of error that he had waived."); *Ind. Educ. Employment Relations Bd. v. Tucker*, 676 N.E.2d 773, 776 (Ind.Ct.App.1997) (applying rule in Administrative Procedures and Orders Act that "[a] party may only obtain judicial review of an issue that was raised before the administrative agency and preserved for review"). The public's interest in transparent public agency decisionmaking is disserved when a party knowingly acquiesces to a violation of the Open Door law—and then litigates when a result *unfavorable to the party* is reached. I note, however, this principle in no way impairs the nonparty public citizen who vindicates his right to access, because, in such cases, there is no waiver in the hope of future advantage.

Turning to the facts of the instant case, the record shows that a reporter for the Tribune Star was not permitted to attend the September 9 meeting. Tr. p. 13, 52. According to Roberts's affidavit, he objected to the meeting being closed to the public. Appellees' App. p. 24. Likewise, Roberts complained at the September 28 meeting that Frye was not allowed to attend. Tr. p. 31. Roberts raised these Open Door violations to the trial court. Specifically, he raised the September 9 violation in his amended complaint, and the September 28 violation in an oral motion that the pleadings conform to the evidence. Appellees' App. p. 21 (September 9 violation); Tr. p. 7 (September 28 violation). Because Roberts objected to the obvious violations at both meetings and raised the issues before the trial court, I

fully concur in the majority's analysis and disposition.