## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2020, 10:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Todd J. Janzen
Brianna J. Schroeder
Janzen Agricultural Law LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Bruce N. Elliott
Marion, Indiana

ATTORNEY FOR INTERVENORS

Robert W. Eherenman
Haller & Colvin, P.C.
Fort Wayne, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nolan Holloway, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Grant County Area Plan Commission, <br> *Appellee-Respondent,* <br><br> Susan E. Smoker, Jon W. Mattern, Shirley M. Mattern, Rodney L. Kelly, Arndt Mueller, James W. Riley, Beverly Riley, and The Riley Family Trust, <br> *Intervenors.* | August 31, 2020 <br><br> Court of Appeals Case No. 20A-PL-117 <br><br> Appeal from the Grant Superior Court <br><br> The Honorable Warren Haas, Judge <br><br> Trial Court Cause No. 27D03-1901-PL-1 |

**Najam, Judge.**

## Statement of the Case

Nolan Holloway appeals the trial court's denial of his petition for judicial review following an adverse decision by the Grant County Area Plan Commission ("the Plan Commission"). Holloway raises one issue for our review, which we restate as the following two issues:

    1.     Whether the trial court abused its discretion when it declined to vacate the Plan Commission's final decision following a violation of Indiana's Open Door law.

    2.     Whether Holloway preserved for judicial review his argument that the Plan Commission was required to approve his final Concentrated Feeding Operation ("CFO") application as a ministerial act or his argument that the Plan Commission violated his due process rights at the final meeting on his CFO request.

We affirm.

## Facts and Procedural History

On December 16, 2019, pursuant to Indiana Code Section 36-7-4-1614(c), the trial court entered the following relevant findings of fact on Holloway's petition for judicial review from a final decision of the Plan Commission:

1. The Grant County Zoning Ordinance ("GCZO") establishes zoning regulations for [CFOs]. The scope and purpose of these CFO zoning regulations clearly state that: "To minimize adverse effects and to protect the public health and safety consideration should be given to the many branches of the agricultural industry and their effect on the environment. The Plan Commission

recognizes that the county has many diverse areas where the geologic, topographic, climatic, biological and social conditions are significantly different and specifications for animal feeding operations may vary depending on these conditions." (GCZO, § 153,525(A)).

2. The GCZO expressly recognizes that: "Animal feeding operation [("AFO")[1]] development plan review is hereby established in order to encourage the flexibility in the development of land that may be necessary to permit adjustments to changing public and private needs; to foster the ability to provide development patterns which are more compatible with and effective in meeting the needs; to promote the more efficient use of land so as to preserve and enhance the natural characteristics and unique features of property; to improve the design, character and quality of new development; to encourage integrated planning for the economical provision of streets/roads/infrastructures and other utilities to reduce the burden by more efficient development; and to conserve the value of land." (GCZO, § 153.525(B))[.]

3. The GCZO provides that the basis for having a CFO zoning review is because "animal feeding operation land uses, while generally appropriate in agricultural zoning districts have characteristics and location impacts which may have detrimental effect upon other land uses." (GCZO, § 153.528).

4. The CFO zoning review includes, among other criteria, the consideration of "[c]ompatibility of the proposed use and the site design with the district and adjoining areas in which the use is proposed to be located." (GCZO, § 153.529(C)).

---

[1] AFO and CFO appear to have been used interchangeably before the Plan Commission and the trial court, and there is no suggestion on appeal that they are materially different for Holloway's purposes.

5.  The GCZO also requires the CFO to show the proximity of the CFO to "sensitive areas." (GCZO, § 153.529(D)).  The GCZO defines "sensitive area" as "[a] site where conditions pose specific water quality threat to one or more of the following:  (1) [a]quifers used as source of drinking water; (2) [p]ublic water supply wells; (3) [w]ell head protection areas; (4) [d]rinking water supply reservoirs; and (5) [a]reas requiring special protection," such as wetlands, karst terrain, critical habitat for endangered species[,] or natural areas. (GCZO, § 153.527).

6.  The GCZO also imposes development requirement that the "AFO must be so located as to exercise no undue detrimental influence upon surrounding properties which can be ensured if all requirements are met.  In addition, the AFO shall not endanger the public welfare or safety." (GCZO, § 153.530(B)).  One of the development requirements in the GCZO is to provide "[c]omplete subsurface geological study of the area on which the structures and monitoring wells will be located, including information on soils; groundwater sampling and analysis; hydrology; geology of the land areas used for the manure storage or treatment facility; and a digital magnetic survey."  (GCZO, § 153.530(K)).

7.  When an applicant applies for CFO zoning approval, "[a]ll prospective applicants shall review copies of this subchapter, which is available for inspection at the Area Plan Office to determine the consistency of the proposal with the county's adopted planning rationale and whether or not the proposal is likely to be compatible with existing and anticipated lands uses in the vicinity of the proposal." (GCZO, § 153.531(B)).  The "applicant is required to sign a statement to the effect that the applicant has reviewed copies of this subchapter and the zoning maps of this subchapter at the time the AFO application is submitted for approval."  (GCZO, § 153.531(B)(1)).

8.  The GCZO provides for a special *two-step process* for CFO zoning approval.  First, the Plan Commission hears a "preliminary development plan."  Following a public hearing

and review of the preliminary development plan, the Plan Commission has the option of approving it, approving it with conditions, or denying it. (GCZO, § 153.531(B)(2)(c)). *The approval of the preliminary development plan "shall not constitute approval of the final development plan."* (GCZO, § 153.531(B)(2)(d)). Rather, it is only preliminary approval of the "layout." *Id. The second step of the CFO approval process is the "final development plan," and "the Plan Commission must approve, approve with conditions or deny" the final development plan.* (GCZO, § 153.531(C)(2)(c)). The final development plan is approved by the Plan Commission adopting findings of fact with six specific criteria that are set forth in Section 153.537(A) through (F).

9. On July 13, 2018, Petitioner Nolan Holloway ("Petitioner") applied under the GCZO for zoning approval of CFO for 9,240 pigs.

10. Petitioner's proposed CFO would generate approximately 1.92 million gallons of manure per year.

11. Petitioner certified to [the Plan Commission] that he had "reviewed a copy of the Grant County Areawide Zoning Ordinance" and that he was "familiar with AFO requirements and procedures." By making this certification, Petitioner clearly understood the development requirements in the GCZO, which require the "proposed use" be "compatible"; that there be "no undue detrimental influence upon surrounding properties"; and that the public welfare and safety were not to be endangered. GCZO, §§ 153.529(C) and 153.530(B). Petitioner specifically responded to these criteria to demonstrate "compatibility."

12. In his application, [while] Petitioner stated the distance his proposed CFO would be from a residential district, Petitioner's application did not include any reference to separation from "sensitive areas," as defined by the [GCZO]. Also, Petitioner's CFO application did not contain a geological study of the

surrounding area, as required by Section 153.530(K) of the GCZO.

13. On October 1, 2018, the Plan Commission held its preliminary hearing on Petitioner's CFO application.

14. At the hearing, the Plan Commission explained the two-step process under the GCZO and explained that the Plan Commission would make its final decision at the next meeting and base its decision upon the criteria set forth in Section 153.537(A) through (F) of the GCZO.

15. At the October 1, 2018, public hearing, Petitioner presented information that his CFO application satisfied the legal criteria in the GCZO, including [that] his proposed CFO would not endanger the public welfare or safety, would not have an undue detrimental influence upon surrounding properties, and would not be a risk to human health, the environment or the general public welfare. Petitioner did not introduce any evidence regarding sensitive areas or geological studies.

* * *

17. The Intervenors[2] introduced evidence that Petitioner's CFO application did not comply with the GCZO's legal criteria. In particular the Intervenors introduced two expert reports: one from an MAI appraiser and the other from a board-certified geologist, both of whom opined that the proposed location of the CFO would be harmful to the surrounding area.

18. There were also numerous citizen emails and correspondence received by the Plan Commission opposing

---

[2] While the Intervenors are parties on appeal, they have joined the Plan Commission's submissions to this Court, and we need not separately refer to them.

Petitioner's CFO because it would not be compatible with the surrounding area, would adversely affect property values, would be otherwise detrimental to the surrounding area, and would endanger the public health and safety.

\* \* \*

20. At the conclusion of the [October 1] public hearing, the Plan Commission voted to conditionally approve Petitioner's zoning application which moved the preliminary plan to the final stage where the zoning request would be evaluated according to the criteria set forth in Section 153.537(A) through (F) of the GCZO.

21. On December 3, 2018, the Plan Commission held its meeting on the final review and approval of Petitioner's CFO.

22. The Plan Commission stated that it would need to address each of the six findings of fact in Section 153.537 of the GCZO and that Petitioner had the burden of proving all six findings of fact.

23. During the December 3 meeting, *Petitioner was asked questions and was the only member of the public allowed to speak to the Plan Commission.*

24. *At no time during the December meeting did Petitioner ever object or challenge the issues that were being raised or considered by the Plan Commission, and Petitioner never objected to the GCZO's process. Petitioner never told the Plan Commission that they had no discretion in reviewing his CFO approval or that it was just a ministerial act. Even though Petitioner was given numerous times to speak at the December meeting, he did not object to or challenge the GCZO's development requirements, the application of the GCZO to his property, the findings of fact required by Section 153.537 of the GCZO, or the conduct of any Plan Commission member at the meeting.*

25. On December 3, 2018, by a vote of 8-2, the Plan Commission denied the final approval of Petitioner's CFO based on the findings of fact required by Section 153.537 of the GCZO.

26. On January 2, 2019, Petitioner filed his Verified Petition for Judicial Review challenging the zoning decision made by the Plan Commission.

27. On January 8, 2019, the Intervenors filed their motion to intervene which was granted on January 16, 2019.

28. After an extension of time was granted, Petitioner timely filed the zoning record with the Court on February 21, 2019, as required by I.C. [§] 36-7-4-1613.

29. On April 18, 2019, the Court remanded this matter back to the Plan Commission for the entry of proper findings of fact and, after approving new findings of fact on May 20, 2019, the Plan Commission filed its findings of fact on May 21, 2019.

Appellant's App. Vol. II at 9-13 (emphases added; some citations omitted). The court then concluded in relevant part as follows:

43. The Court has reviewed the [r]ecord and concludes that . . . Petitioner never advised the Plan Commission that it did not have any discretion in approving his CFO and was required to approve it as a ministerial act.

* * *

45. . . . [T]he failure to raise an issue at the agency level waives the issue for the purposes of judicial review.

46. This type of waiver also applies to constitutional issues.

*   *   *

48.  *Based on the foregoing, the Court concludes that Petitioner's contentions and arguments are all . . . waived because Petitioner failed to preserve these issues for judicial review . . . .*

49.  Furthermore, the [r]ecord reveals that the Plan Commission proceedings were orderly, fair, judicious and complied with due process.  Petitioner was given ample time to present his case and to make any objections to the proceedings . . . or any of the legal criteria for his CFO zoning approval.  Petitioner filed his CFO application in July of 2018 and the Plan Commission's final decision was not made until December of 2018.  Petitioner had five months to make any written or oral objections to the GCZO's CFO zoning regulations and/or the Plan Commission proceedings[.]  *Petitioner simply chose to remain silent and to not make any such objections.*

*   *   *

50.  It is undisputed that the Plan Commission committed a violation of the Indiana Open Door Law by denying certain members of the media the opportunity to video[record] the December 3, 2018, Plan Commission meeting.  However, the media that were denied the right to video[record] the hearing did not bring an Open Door violation and the Court concludes that this Open Door [v]iolation does not justify reversing the Plan Commission's denial of Petitioner's CFO application.

51.  I.C. [§] 5-14-1.5-7(d) provides a balancing test whether to declare the final action of the Plan Commission void because of an Open Door violation.

*52.  In this case, the Court concludes that the factors in I.C. [§] 5-14-1.5-7(d)(1) through (3) weigh against reversing the Plan Commission's denial of Petitioner's CFO.*

53. The Court concludes that the violation did not affect the substance of the Plan Commission's final action, did not deny or impair meaningful access to the December meeting, and did not prevent or impair public knowledge or understanding of the Plan Commission's public business. I.C. [§] 5-14-1.5-7(d)(1). The [r]ecord demonstrates that the meeting was still held open to the public to watch and observe as the Plan Commission deliberated over its findings. The Plan Commission recorded the meeting, and this recording was later available for review, inspection and copying under the Access to Public Records statute. The Plan Commission publicly deliberated over the six findings of fact required by the GCZO, and this deliberation was open for the public to observe. The violation of the Open Door Law did not affect Petitioner's ability to pursue or defend his CFO application, as he was the only member of the public allowed to engage and debate the proposed findings with members of the Plan Commission at the December 3 meeting. Finally, Plan Commission President, Mr. Bothwell—like he did at the October 1 hearing—provided a very thorough explanation of the GCZO process, as well as the criteria that the Plan Commission was required to consider under the GCZO.

54. The Court also concludes that voiding the Plan Commission's decision is not a necessary prerequisite to substantial reconsideration of the CFO denial. I.C. [§] 5-14-1.5-7(d)(2). In this case, the matter has already been remanded by the Court back to the Plan Commission for reconsideration of its Findings of Fact. The Plan Commission met in a public meeting on May 3, 2019 and adopted detailed, written Findings of Fact, and there is no evidence that the public was denied the right to record, video, or observe the Plan Commission's May 3 public meeting. Again, there is no evidence of any other Open Door Law violations for either the October 1 public hearing or the December 3 meeting or that the Plan Commission did not substantially comply with the Open Door Law in all other respects.

55. Finally, the Court concludes that the remedial benefits of allowing the public to video record a second meeting are outweighed by the prejudice to the public and the reliance on the Plan Commission's decision. I.C. [§] 5-14-1.5-7(d)(3). The media who were denied the right to record the December meeting did not file a complaint with the Public Access Counselor and did not bring any action against the Plan Commission for the Open Door violation. Numerous members of the public, including all of the citizens and property owners in the surrounding area who opposed Petitioner's CFO, have relied on the Plan Commission's decision to deny the CFO. The Intervenors and the numerous Grant County citizens who opposed Petitioner's CFO had nothing to do with the violation of the Open Door Law and spent long hours organizing, collecting petitions, sending letters to the Plan Commission and attending long Plan Commission meetings on Petitioner's CFO. To remand this matter to back to the Plan Commission for another meeting appears to be a useless act as no new evidence can be admitted into the [r]ecord and the Plan Commission's decision would not change. Again, the Open Door violation in no way affected Petitioner's ability to present and defend his application; the meeting was already being recorded and transcribed and there is an accurate record of the Plan Commission's deliberations; and the meeting was otherwise open to the public and complied with the Open Door law.

56. The Court concludes that the Open Door Law violation had nothing to do with the Plan Commission's ultimate decision to deny Petitioner's CFO application and the Plan Commission was very open and transparent in explaining how it was conducting its public business and how it reached its zoning decision.

* * *

78. Petitioner does [not] contend that the Plan Commission's Findings of Fact are unsupported by substantial evidence and does not dispute the underlying factual basis of the Plan Commission's Findings of Fact.

*Id.* at 16-18, 22 (emphases added; citations omitted); *see also id.* at 19-20 (concluding again that Holloway had waived his claims of due process errors) and *id.* at 22 (concluding again that Holloway had waived his claim that the Plan Commission was required to approve his final request as a ministerial act based on its preliminary approval).

[4] Based on its findings and conclusions, the court denied Holloway's petition for judicial review and affirmed the Plan Commission's final decision to deny his CFO request. This appeal ensued.

## Discussion and Decision

### *Standard of Review*

[5] Holloway appeals the trial court's denial of his petition for judicial review over the Plan Commission's final decision. Indiana Code Section 36-7-4-1614(d) (2020) provides that a reviewing court, whether the trial court or this Court,

> shall grant relief . . . only if the court determines that a person seeking judicial relief has been prejudiced by a zoning decision that is:
>
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) contrary to constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

A decision is arbitrary and capricious if it is "patently unreasonable" or "made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion." *Lockerbie Glove Factory Town Home Owners Ass'n, Inc. v. Indianapolis Historic Pres. Comm'n*, 106 N.E.3d 482, 488 (Ind. Ct. App. 2018) (quotation marks omitted), *trans. denied*. A decision is unsupported by substantial evidence if there is no "relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Id.* The party seeking judicial review has the burden of demonstrating the invalidity of a plan commission's decision. I.C. § 36-7-4-1614(a).

[6] When we review a plan commission's decision, we may not reweigh the evidence or reassess the credibility of the witnesses. *Id.* We must accept the facts as found by the plan commission, but we review questions of law *de novo*. *Id.* We presume the determination of a plan commission with expertise in a given subject is correct. *Id.* at 488-89.

[7] On appeal, Holloway argues that the trial court erred in denying his petition because the Plan Commission's decision against him was arbitrary, capricious, or contrary to law. In particular, he asserts: (1) that the trial court abused its discretion when it did not vacate the Plan Commission's decision after the Plan Commission violated Indiana's Open Door law; and (2) that the Plan Commission's final decision was arbitrary, capricious, or contrary to law because he satisfied the conditions attached to the preliminary approval and

because the Plan Commission denied him an opportunity to respond to new evidence presented at the meeting for final approval. We address each of Holloway's arguments in turn.

### Issue One: Whether the Trial Court Abused its Discretion when it Declined to Vacate the Plan Commission's Decision

We first consider Holloway's argument that the trial court erred when it did not vacate the Plan Commission's decision following an Open Door violation. We initially note, as the trial court did, that there is no dispute that the Plan Commission's final meeting on Holloway's CFO request was in violation of Indiana's Open Door law when it excluded third-party media from recording the meeting.[3] The only dispute on appeal is whether the trial court entered an erroneous remedy for that violation.

As we have explained:

> Whether to declare void any policy, decision, or final action taken by a public agency in violation of the Open Door Law is a matter left to the trial court's discretion. Among the factors the trial court considers in reaching this determination are: 1) the extent to which the violation affected the substance of the action, denied or impaired access to any meetings that the public had a right to observe, and prevented or impaired public knowledge or understanding; 2) whether voiding of the action is a necessary prerequisite to a substantial reconsideration of the subject matter; and 3) the balancing of the remedial benefits gained by effectuating the public policy of the state declared in the

---

[3] We agree with Holloway that "[t]here is no requirement that the ousted media file a claim" under the Open Door law for a violation to be found. Appellant's Br. at 16. But we disagree with Holloway's suggestion that the trial court said otherwise.

"Purpose" section of the Open Door Law against the prejudice likely to accrue to the public if the action is voided (including the extent to which persons have relied upon the validity of the challenged action).

*Frye v. Vigo County*, 769 N.E.2d 188, 196 (Ind. Ct. App. 2002); *see also* I.C. § 5-14-1.5-7(d) (enumerating those same factors for the trial court to consider in determining the proper remedy for an Open Door violation).

[10] Holloway's argument on this issue disregards our standard of review and appears to be premised on the incorrect assumption that we will engage in a *de novo* review of the relevant factors. We will not do so. While we do not approve of the Plan Commission's obvious Open Door violation, the trial court considered the statutory factors and the evidence underlying each factor, Holloway does not challenge the court's findings on appeal, and he does not assert that the court erred as a matter of law in its finding of any factor or in its balancing of the factors.[4] Accordingly, we cannot say that the trial court's remedy for the Open Door violation was an abuse of the court's discretion. The trial court was *not* required to vacate the Plan Commission's final decision, and we will not reweigh the statutory factors on appeal as Holloway requests. We affirm the trial court's judgment on this issue.

---

[4] Holloway asserts that the trial court found that the Plan Commission had "cured" the Open Door violation, and he asserts that such a finding is contrary to the Open Door law. *See* Appellant's Br. at 16. But nowhere in the trial court's judgment did the court find that the Plan Commission had "cured" the Open Door violation. Rather, the court's judgment is clear that it considered the evidence underlying the statutory factors and then balanced those factors to determine the proper remedy for the violation.

***Issue Two: Whether Holloway Preserved for Judicial Review
His Arguments that the Plan Commission was Required to
Approve his Final Request as a Ministerial Act and Whether
the Plan Commission Violated his Due Process Rights***

[11]   Holloway also asserts on appeal that the Plan Commission's final decision to deny his CFO request was arbitrary and capricious because, once the Plan Commission approved Holloway's preliminary development plan subject to conditions, and he satisfied those conditions, the final approval of his CFO request should have been a mere ministerial act of the Plan Commission. He also asserts that the Plan Commission violated his due process rights when it did not give him an opportunity to respond to evidence presented at the final meeting.

[12]   But Holloway was present and, contrary to his assertions on appeal, given an opportunity to speak at the December 3 meeting. Indeed, the trial court expressly found that Holloway was permitted to speak at that meeting, but "he simply chose to remain silent . . . ." Appellant's App. Vol. II at 17. Holloway does not assert that the trial court's findings are not supported by substantial evidence. Instead—in his Reply Brief—he asserts that objecting was not required here because doing so would have been a "dramatic interruption" of the Plan Commission's proceedings, uncivil, and "a public disturbance." Reply Br. at 10-11. We reject Holloway's argument that he should be excused from presenting his arguments and objections to the Plan Commission on his theory that doing so might have been seen as rude.

As the trial court found and concluded, Holloway's failure to raise these arguments to the Plan Commission at the final meeting results in his waiver of these arguments. Indiana Code Section 36-7-4-1610 expressly says:

> A person may obtain judicial review of an issue that was not raised before the board, only to the extent that:
>
> (1) the issue concerns whether a person who was required to be notified by this chapter or other law of a board hearing was notified in substantial compliance with this chapter or other law; or
>
> (2) the interests of justice would be served by judicial resolution of an issue arising from a change in controlling law occurring after the zoning decision.

Neither of those two exceptions to the rule of waiver applies to Holloway's arguments here.[5] *See Lockerbie Glove Factory*, 106 N.E.3d at 489 (holding that the petitioner's failure to object to alleged commissioner bias at the agency level resulted in a waiver of the issue on judicial review). Accordingly, Holloway's arguments are not properly before us, and we cannot consider them.

## Conclusion

In sum, we affirm the trial court's denial of Holloway's petition for judicial review.

---

[5] Moreover, as the trial court found, the Grant County Zoning Ordinance plainly provides a "two-step process for CFO zoning approval" and "[t]he approval of the preliminary development plan shall not constitute approval of the final development plan." Appellant's App. Vol. II at 10 (quotation marks omitted).

Affirmed.

Bradford, C.J., and Mathias, J., concur.