Ruben J. HINOJOSA, Appellant–
Plaintiff,

v.

BOARD OF PUBLIC WORKS & SAFE-
TY FOR THE CITY OF HAMMOND,
INDIANA, the City of Hammond,
Indiana, and John E. Cory, Chief of
Police for the City of Hammond,
Indiana, Appellees–Defendants.

No. 45A03–0205–CV–169.

Court of Appeals of Indiana.

June 6, 2003.

Nathaniel Ruff, Merrillville, IN, Attorney for Appellant.

Eugene M. Feingold, Steven P. Kennedy, Law Offices of Eugene M. Feingold, Munster, IN, Attorneys for Appellees, Board of Public Works & Safety for the City of Hammond, Indiana, and the City of Hammond, Indiana.

Gilbert F. Blackmun, Blackmun, Bomberger, Moran & Tyler, Highland, IN, Attorney for Appellee, John E. Cory, Chief of Police for the City of Hammond, Indiana.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Ruben J. Hinojosa (Hinojosa), appeals from the trial court's finding that the Board's final action of firing him should not be voided as a result of the Board's violations of the Indiana Open Door Law (IODL).[1] Hammond cross-appeals, claiming that the trial court erred in finding that the Board committed a violation of the IODL when it conferred with its legal counsel during the course of an administrative disciplinary hearing and that the trial court erred in awarding attorney fees to Hinojosa for violations of the IODL.

We affirm.

### ISSUES

Hinojosa raises two issues on appeal, and Hammond raises two issues on cross-appeal, which we consolidate and restate as follows:

1. Whether the trial court abused its discretion when it decided not to void the final action of the Board to terminate Hinojosa, after finding numerous violations of the IODL.

2. Whether the trial court erred in finding that Hinojosa was entitled to attorney fees because of the violations of the IODL committed by the Board.

3. Whether the trial court erred in finding that the Board committed a violation of the IODL when the Board conferred with legal counsel in the course of an administrative disciplinary hearing.

### FACTS AND PROCEDURAL HISTORY

For the past nineteen years, Hinojosa has been a police officer with the Hammond Police Department. He is currently

---

1. We note that the "Board" is referring to Appellee–Defendant, Board of Public Works and Safety for the City of Hammond, Indiana. The other Appellees–Defendants are as follows: The City of Hammond, Indiana (City of Hammond) and John E. Cory, the Chief of Police for the City of Hammond (Chief Cory). The Board, City of Hammond, and Chief Cory are collectively called "Hammond."

suspended for allegedly disobeying orders and "going public with statements of corruption in the Hammond Police Department." *See Hinojosa v. State,* 752 N.E.2d 107, 109 (Ind.Ct.App.2001), vacated by *Hinojosa v. State,* 781 N.E.2d 677 (Ind.2003).

The facts underlying Hinojosa's suspension started during the evening hours of October 21, 1997. On that evening, Thomas Hanna ("Hanna"), a lieutenant with the Hammond Police Department, went to the Calumet Tap to socialize with his coworkers and Mayor Duane Dedlow ("Dedlow"). At approximately 10:00 p.m., Hanna left in his department-issued unmarked car and responded to a dispatch about shots fired near the Hammond High School. Hanna subsequently confronted a young man named LuJuan Jones ("Jones"), pointed his handgun at Jones, and verbally accosted him. A short time later, Hanna allegedly confronted Jamie Weems ("Weems") and assaulted him in a similar manner.

Jones reported the incident to police. Officer Donald Vicari ("Vicari") responded, but no action was taken. Meanwhile, Hanna returned to the Calumet Tap. After he left, he drove north on Calumet Avenue where he collided with a parked Hammond police car with its emergency lights activated. The collision injured the officer in the police car and the motorist the officer was assisting.

Captain Steven Ridgley ("Ridgley") and Officer George Gavrilos ("Gavrilos") eventually arrived on the scene. Ridgley instructed Gavrilos to take over the investigation. In the meantime, Ridgley allegedly took Hanna to the police garage across the street where Hanna drank coffee for two hours before giving a breath test. Despite the fact that a certified breath test operator was on duty, it was alleged that Ridgley called Sergeant Ronald Gennarelli ("Gennarelli") in from home to administer the breath test. The test results revealed Hanna's blood alcohol content to be ".00 despite the fact [that] Hanna was visibly intoxicated and physically impaired only two hours" earlier. *Hinojosa,* 752 N.E.2d at 109. No action was taken against Hanna by the Hammond Police Department.

In the months following this incident, Hinojosa alleged that certain members of the Hammond Police Department and city government had "covered up the drunk driving accident." *Id.* Hinojosa's statements were printed in the local newspaper. Additionally, he picketed city hall, informed the city council, and solicited help from the Indiana State Police. As a result, a special grand jury was impaneled and testimony was taken from Hanna and other members of the department and city government. Hanna and several other members of the department were indicted for their actions surrounding the October 21, 1997 incidents. However, the indictments against everyone except Hanna were dismissed because the State did not notify them they were targets of the grand jury investigation.

Approximately two weeks later, disciplinary charges were brought against Hinojosa. On June 15, 2000, Chief Cory submitted a letter to the Board of Public Works and Safety requesting the dismissal of Hinojosa from the Hammond Police Department pursuant to Ind.Code § 36–8–3–4(b)(2)(B) and I.C. § 36–8–3–4(b)(2)(C). The letter alleged that on November 17, 1998, November 23, 1998, and February 9, 2000, Hinojosa violated a direct order of a superior officer. Specifically, the letter claimed that Hinojosa failed to provide a typed report detailing all of the information that he possessed with regards to police corruption within the Hammond Police Department as he alleged at a public meeting of the Hammond City Council on November 16, 1998.

As a result and in the course of this violation, Chief Cory further contended that Hinojosa violated the following rules and regulations of the Hammond Police Department. Chief Cory claimed that Hinojosa's failure to obey the order was a violation of the rule that an officer is required to report any information that requires action by the Hammond City Police Department. Moreover, Chief Cory charged that Hinojosa appeared before the Hammond City Council in violation of a departmental rule that an officer shall not appear before a public body as a representative of the Hammond Police Department without approval.

The approved minutes from the June 15, 2000, meeting provide as follows:

Under matters from other department heads, Chief Cory presented a letter to the Board for approval requesting the dismissal of Sergeant Ruben Hinojosa from the Hammond Police Department pursuant to I.C. 36-8-3-4(b)(2)(B)—Violation of Rules and (2)(C)—Disobedience of Orders. The letter states that Sgt. Hinojosa also violated several Rules and Regulations of the Hammond Police Department. Motion by Mr. Bonaventura to approve the Chief's request. Seconded by Mr. Dostatni. AYES ALL. Motion carried.

(Appellant's App. p. 193). The minutes for the June 15, 2000 Board meeting were approved on June 22, 2000, and signed by Diana C. Gonzalez (Gonzalez), President.

On June 16, 2000, Gonzalez, in her capacity as President of the Board, sent a letter to Hinojosa, informing him of the charges and providing notice of his right to a hearing on the allegations pursuant to I.C. § 36-8-3-4. Subsequently, on June 19, 2000, Hinojosa filed a timely request for a hearing. On June 23, 2000, Gonzalez, in her capacity as President of the Board, sent a letter to Hinojosa informing him that the Board would conduct a hearing on July 20, 2000, thirty-two days after Hinojosa made his request. On July 20, 2000, the Board approved a continuance of the hearing until August 24, 2000. On August 24, 2000, the Board continued the hearing until September 28, 2000.

The Board conducted additional hearings involving this matter on September 7, 2000, September 14, 2000, and September 21, 2000. However, the Board failed to post notices of the August 24, 2000, the September 7, 2000, or the September 21, 2000 hearings forty-eight hours before the hearings, as required by I.C. § 5–14–1.5–5 and I.C. § 5–14–1.5–6.1. Moreover, the Board failed to post agendas prior to the hearings on August 24, 2000, September 7, 2000, September 14, 2000, and September 21, 2000. The posting of an agenda before each hearing is required by I.C. § 5–14–1.5–4. Additionally, the Board conducted proceedings off the record during the hearings on August 24, 2000, September 7, 2000, September 14, 2000, and September 21, 2000. At these meetings, Hinojosa's counsel raised several objections to the actions taken by the Board.

In order to establish his defense under Indiana's whistleblower statute, Hinojosa petitioned the trial court to release the transcripts of the grand jury testimony. After hearing arguments on August 22 and 23, 2000, the trial court denied his petition finding that, "there is no authority that permits" the release of the transcripts. *Id.* On September 22, 2000, Hinojosa filed his Motion to Correct Error and it was subsequently denied.[2]

---

**2.** Thereafter, on July 17, 2001, this court reversed the ruling of the trial court and ordered the trial court to grant Hinojosa's Petition for Production of Grand Jury Transcripts. On January 15, 2003, our supreme court vacated the opinion of the Court of Appeals

On September 25, 2000, Hinojosa filed his Verified Complaint for Emergency Temporary Restraining Order, Preliminary Injunction, Injunctive Relief, Declaratory Judgment and Voiding of the Actions of the [Board]. Specifically, Hinojosa alleged, in pertinent part, the following:

15. The Board failed to post a notice of the August 24, 2000, September 7, 2000, September 14, 2000, and September 21, 2000, hearings as required by I.C. 5–14–1.5–4, and considered and acted upon items not contained in an agenda required by I.C. 5–14–1.5–4.

16. The Board failed to post an agenda prior to the August 24, 2000, September 7, 2000, September 14, 2000, or September 21, 2000, hearings as required by I.C. 5–14–1.5–5 and I.C. 5–14–1.5–6.1.

17. The Board conducted proceedings off the record during said hearings where the public was not allowed to attend, where no off record proceedings were represented in an agenda, where no notice of an executive session was given and where no minutes of those matters considered were produced, all contrary to the provisions of I.C. 5–14–1.5–3, I.C. 5–14–1.5–4, I.C. 5–14–1.5–5, I.C. 5–14–1.5–6.1, and I.C. 5–14–1.5–7 (transcripts of these proceedings were made, however, they are voluminous to attach as an exhibit, same will be presented during hearing by way or oral recitation or submission).

. . .

20. The alleged violations have affected the substance of the policy, decisions and/or final actions taken by the Board.

21. The alleged violations have denied and/or impaired access to the meetings herein, that the public had a right to observe and record.

22. The alleged violations have prevented and/or impaired public knowledge or understanding of the public's business.

(Appellant's App. pp. 194–95). Therefore, Hinojosa's complaint claimed that voiding the policies, decisions and/or final actions of the Board was a necessary prerequisite to substantial reconsideration of the subject matter. Moreover, Hinojosa's complaint stated that the public interest will be served by voiding the policies, decisions, and/or final actions of the Board and outweigh other considerations as set forth in I.C. 5–14–1.5–7(d) and that the filing of this action was necessary to prevent current and further violations. Accordingly, Hinojosa requested a Temporary Restraining Order and/or Preliminary Injunction.

On November 27, 2000, the trial court granted Hinojosa's Verified Motion for Emergency Hearing for Requested Injunctive Relief. The trial court further ordered that the proceedings involving Hinojosa were stayed and that no further action by the Board was allowed until further order. Additionally, on November 27, 2000, the Board and the City of Hammond filed their Answer to the Verified Complaint for Emergency Temporary Restraining Order, Preliminary Injunction,

pursuant to Ind. Appellate Rule 58(A) and remanded the case to the trial court, *i.e.,* Lake County Superior Court, The Honorable Clarence L. Murray, Cause No. 45G02–9806–DF–10029. Specifically, our supreme court held that the trial court was in the best position to

make a determination regarding the existence of a particularized need. *See Hinojosa v. State,* 781 N.E.2d 677 (Ind.2003). At the time of this appeal, we do not know the outcome of the remand to the trial court regarding the existence of a particularized need.

Injunctive Relief, Declaratory Judgment, etc.

In response to Hinojosa's complaint, specifically paragraphs 15–17 and 20–22 (listed above), the Board and the City of Hammond denied all of the allegations. Chief Cory also filed his Answer to Hinojosa's complaint on November 27, 2000. He denied all of the allegations contained in paragraphs 15–17 and 20–22 of Hinojosa's complaint (listed above). Chief Cory also asserted the affirmative defense that at no time was Hinojosa terminated from the Hammond Police Department. Specifically, Chief Cory claimed that Hinojosa has continued to receive all pay and benefits since Chief Cory requested Hinojosa's dismissal by the Board. Therefore, Chief Cory maintained in his Answer that Hinojosa, by accepting the pay and benefits he has received since Chief Cory requested his termination, has waived any claim that Chief Cory and the Board terminated him. Moreover, on November 27, 2000, Hammond filed its motion for change of judge. After reviewing the motion, the trial court granted the motion for change of judge.

On January 22, 2001, Hammond filed a Motion to Dissolve Order Granting Injunctive Relief. On April 20, 2001, a hearing was held. At the hearing, the trial court heard argument and dissolved the injunction and instructed the administrative proceedings to resume. On April 20, 2001 and September 24–26, 2001, a bench trial was held on the consolidated matter, *i.e.* the verified complaints filed by Hinojosa on September 25, 2000, May 17, 2001, and August 16, 2001. Evidence was submitted and arguments of counsel were heard.

On October 12, 2001, the trial court entered its Findings of Fact, Conclusions of Law, and Judgment. The trial court found *inter alia* that placing an agenda in a tray near the door rather than on the entry door itself did not constitute a violation of the IODL. (Conclusion of Law 7, Appellant's App. p. 20). The trial court also determined that the Board conducted proceedings off the record during the August 24, 2000, September 7, 2000, September 14, 2000, September 21, 2000, and November 9, 2000 hearings where the public was not allowed to hear, where no off-record proceedings were represented in the agenda, where no notice of an executive session was given, and where no minutes of those matters considered were produced, all contrary to the provisions of I.C. § 5–14–1.5–3, I.C. § 5–14–1.5–4, I.C. § 5–14–1.5–6.1 and I.C. § 5–14–1.5–7. (Conclusion of Law 8, Appellant's App. pp. 21–2). As a result, the trial court concluded that the Board denied the public the right to record the public and private meetings held on August 24, 2000, September 7, 2000, September 14, 2000, September 21, 2000, and November 9, 2000, in violation of the IDOL. (Conclusion of Law 9, Appellant's App. p. 22).

Moreover, the trial court concluded that it was not demonstrated to what extent the violations of the IODL have affected the substance of the policy, decisions, or final actions taken by the Board, but it noted that the matters addressed in the pre-meetings, recesses, and off-record conversations in violation of the IODL only dealt with procedural, discovery, and other preliminary issues before the Board. The hearing on the merits of the allegations against Hinojosa was not a subject of this proceeding. (Conclusion of Law 12, Appellant's App. p. 22). However, the trial court found that the violations of the IODL impaired the public's access to the meetings and impaired the public knowledge or understanding of the public's business. (Conclusions of Law 13 and 14, Appellant's App. p. 22).

Further, the trial court determined that voiding the decisions of the Board at these

meetings was not a prerequisite to substantial reconsideration of the subject matter; however, the Board's policies against public recording at meetings, and the use of off-record pre-meetings, recesses, and conferences must be declared void. (Conclusion 15, Appellant's App. p. 22). The trial court also found, after considering the factors as required by I.C. § 5–14–1.5–7(d)(3)(A) and (B), that the public interest is not served by voiding the decisions of the Board on the procedural, discovery, or preliminary matters decided during the meetings at issue. (Conclusion of Law 16, Appellant's App. p. 23).[3] Additionally, the trial court concluded that the filing of this action was necessary to prevent current and further violations of the IODL. (Conclusion of Law 17, Appellant's App. p. 23). The trial court also held that Hinojosa was entitled to attorney fees. (Conclusions of Law 18, Appellant's App. p. 23). It was also determined by the trial court that the Board violated the IODL by failing to comply with the express requirements for meeting in executive sessions under the express exceptions contained in I.C. § 5–14–1.5–6, when it conferred with its attorney for pre-meetings before its regularly scheduled public meetings. (Conclusion of Law 20, Appellant's App. p. 23).

With the Findings of Fact and Conclusions of Law in mind, the trial court's judgment stated:

IT IS NOW THEREFORE ORDERED AND DECREED AS FOLLOWS:

1. The Board's prohibition of recording at its regularly scheduled meetings is in violation of the [IODL], and the Board is hereby enjoined from prohibiting the public from recording such meetings in the future.

2. The Board's off-record conversations with its counsel at pre-meetings, during meetings, and during recess of its meetings were in violation of the [IODL], and the Board is hereby enjoined from conducting such off-record pre-meetings, conferences and recess in the future.

3. The Board's conference with its attorney at the properly noticed executive sessions on July 16 and 17, 2001 and its instructions to him to prepare findings and a decision were not in violation of the [IODL].

4. The Board members' conferences with the Board's counsel at Court on the day of a regularly scheduled hearing were not a violation of [IODL].

5. [Hinojosa] is entitled to an award of attorney fees for the prosecution of this action. This matter shall be scheduled for further hearing upon request of either party, at which time the Court shall receive evidence as to the amount of attorney fees to be awarded.

(Appellant's Appendix pp. 23A–23B).

On November 9, 2001, Hinojosa filed a motion to correct error directed to relief ordered by the trial court after finding numerous violations of the IODL. On November 13, 2001, Hammond filed a motion to correct error directed to the award of attorney fees. On December 3, 2001, the trial court entered an order that set a hearing for April 11, 2002 on the motions to correct error. On April 11, 2002, the

---

3. We note that Finding of Fact 54 states: "The substance of the disciplinary complaint against Sgt. Hinojosa before the Board was not heard by the Board at any of the meetings of August 24, 2000, September 7, 14, or 21, 2000, or November 9, 2000. The Board heard the merits of the charges against Hinojosa at hearings held on later dates. Therefore, the Board's actions and decision on those dates are subject to judicial review in another pending proceeding." (Appellant's App. p. 20).

hearing was held and the motions were taken under advisement. On May 9, 2002, the trial court denied the motions to correct error.

Hinojosa now appeals. Hammond now cross-appeals.

## STANDARD OF REVIEW

■ An appeal from a negative judgment determines the standard of review applied by this court. *Frye v. Vigo County*, 769 N.E.2d 188, 192 (Ind.Ct.App.2002). We will not reverse the judgment of the trial court unless it is contrary to law. *Id.* In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the appellee together with all the reasonable inferences to be drawn therefrom. *Id.* The judgment will be reversed only if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id.*

## DISCUSSION AND DECISION

■ The purpose of the Indiana Open Door Law is to assure that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed. *Baker v. Town of Middlebury*, 753 N.E.2d 67, 70 (Ind.Ct.App.2001), *reh'g denied, trans. denied;* I.C. § 5–14–1.5–1. We are required to liberally construe the statute in order to give effect to the legislature's intention. *Id.* Unless an exception applies, "all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." I.C. § 5–14–1.5–3(a). All doubts must be resolved in favor of requiring a public meeting and all exceptions to the rule requiring open meetings must be narrowly construed with the burden of proving the

exception on the party claiming it. *Baker*, 753 N.E.2d at 70.

### I. *Burden of Proof*

■ In the present case, Hinojosa argues that the Board's decision to terminate his employment with the Hammond Police Department should have been declared void due to the Board's violations of the IODL. Specifically, Hinojosa claims that the trial court erred by failing to place the burden of proof on the Board to prove that its final action to terminate Hinojosa should not have been voided in light of the Board's violations of the IODL.

However, case law, statute, policy, and the facts of this case do not support Hinojosa's argument that such a burden of proof should be placed on the Board. To the extent that there is a burden of proof as the matters about which the court must weigh in determining the relief to be granted, that burden remains with Hinojosa as the party seeking relief. We acknowledge that Hinojosa correctly states in his brief that there is no authority to place the burden of proof on the Board to prove that the Board's final action to terminate him should not be declared void for violations of the IODL. In the absence of such authority, the burden of proof must be allocated to the party pleading the particular fact or seeking the particular relief. *See Indiana Law Encyclopedia*, Vol. 12, Evidence, Section 18, generally.

Furthermore, the Indiana cases that have considered whether to void actions taken in violation of the IODL have addressed the requirement for the court to weigh the factors set out in I.C. § 5–14–1.5–7(d), but have not found that the Board or agency bears a burden to show why a decision should not be declared void. *See Frye*, 769 N.E.2d at 196 and *Town of Merrillville v. Blanco*, 687 N.E.2d 191, 199 (Ind.Ct.App.1997), *reh'g denied.* There-

fore, as stated above, we find that in the absence of case law, which shifts the traditional burden of proof, there is no basis to place such a burden on the Board in this case.

■ Moreover, we find that there is no evidence that the legislature intended to put the burden of proof on the Board to establish facts or to create a presumption in favor of not voiding the Board's final action where violations of IODL are found. The decision whether to declare void any policy, decision, or final action taken by a public agency in violation of the IODL is a matter left to the discretion of the trial court. *See Frye*, 769 N.E.2d at 196. *See also Town of Merrillville*, 687 N.E.2d at 199. Relief may include declaratory judgment, injunctive relief, or voiding the public agency's decision. *See* I.C. § 5–14–1.5–7(a). Among the factors the trial court considers in reaching this determination are: 1) the extent to which the violation affected the substance of the final action, denied or impaired access to any meetings that the public had a right to observe, and prevented or impaired public knowledge or understanding; 2) whether voiding of the final action is a necessary prerequisite to a substantial reconsideration of the subject matter; and 3) whether the public interest will be served by voiding the final action by the balancing of the remedial benefits gained by effectuating the public policy of the state with the prejudice likely to accrue to the public if the final action is voided, including the extent to which persons have relied upon the validity of the challenged action and the effect declaring the challenged action void would have on them. *See* I.C. § 5–14–1.5–7(d)(1)–(3).

■ Indiana Code § 5–14–1.5–7(d)(1)–(3) establishes a weighing process with a number of factors that the trial court must consider in exercising its discretion whether to void the final action. No individual factor is designated as carrying any greater weight than any other factor. The matter is left to the discretion of the trial court. *See Frye*, 769 N.E.2d at 196. *See also Town of Merrillville*, 687 N.E.2d at 199. While the IODL is to be construed broadly to accomplish its purpose, the courts have held that substantial compliance with the IODL is sufficient, and not every technical violation of the IODL will require a voiding of governmental action. *Riggin v. Board of Trustees of Ball State University*, 489 N.E.2d 616 (Ind.Ct.App. 1986).

In the case at bar, Hinojosa's contention that the Board has the burden of proof to establish that its IODL violations did not substantially affect the Board's final decision places disproportionate weight on that factor and disregards the other factors in the statute. In particular, Hinojosa claims that the burden of proof should be placed on the Board to demonstrate why the final action should not be declared void. This claim is based only on one of the three factors—the extent to which the violations of the IODL affected the substance of the final action. This is totally contrary to the weighing process and the discretionary nature of relief provided by I.C. § 5–14–1.5–7(d)(1)–(3).

In *Frye*, the Commissioners terminated an employee in two executive sessions that were later determined to be in violation of the IODL. While the *Frye* court does not directly discuss whether either party bears a burden of proof in the matter, the court's comments support the concept that whether to void the final action in violation of the IODL is a weighing process with no presumption in favor of voiding the final action. As mentioned above, the court in *Frye* stated, "whether to declare void any policy, decision, or final action taken by a public agency in violation of the [IODL] is a matter left to the trial court's discre-

tion." *See Frye*, 769 N.E.2d at 196. Then, the court lists the various factors that the trial court must consider. *See* I.C. § 5–14–1.5–7(d)(1)–(3). The *Frye* court concluded, "contrary to Citizen's apparent belief, the trial court could properly uphold the Commissioners' decision to terminate Roberts' employment despite finding a violation of the [IODL]." *See Frye*, 769 N.E.2d at 196–97.

Here, the trial court's Conclusions of Law considered the factors required by I.C. § 5–14–1.5–7(d)(1)–(3). The trial court concluded that the public interest would not be served by voiding the decision of the Board where it related only to procedural, discovery, or preliminary matters. (*See* Conclusion of Law 16, Appellant's App. p. 23). Additionally, Conclusions of Law 12, 13, 14, and 15 specifically address the weighing of the various factors. (Appellant's App. p. 22); I.C. § 5–14–1.5–7(d)(1)–(3). Clearly, the statutory language of I.C. § 5–14–1.5–7(d)(1)–(3) and the applicable case law, *i.e. Frye*, show that the Board did not have the burden of proof to establish that the Board's final action should not be declared void in light of violations of the IODL. Rather, the record shows that the trial court properly weighed the factors required by I.C. § 5–14–1.5–7(d)(1)–(3) and exercised its discretion to uphold the Board's decision to terminate Hinojosa.

Hinojosa also argues that the burden of proof to establish that the Board's final action should not be declared void rests with the Board because there is no way of knowing what took place at the sessions that were found in violation of the IODL. However, the record is clear as to what happened at the sessions, which the trial court found in violation of the IODL.

In the instant case, the trial court found violations of the IODL in the brief off-record conferences between the Board and its legal advisor. These conferences were either pre-meetings, meetings during the administrative hearings or meetings during short recesses taken in the course of the administrative hearings. The record reflects that in most of these instances, the off-record discussions between the Board and its legal advisor occurred in connection with Hinojosa's counsel raising a procedural or discovery motion or objection. The record also shows that in many of the instances the Board or its legal advisor explained or related what went on during the off-record conferences when the meeting resumed.

Additionally, the record reveals that at the evidentiary hearing on April 20, 2001, the members of the Board and the Board's legal advisor testified. Their testimony related what was said and done in the off-record conferences. The Board members' testimony and the testimony of the Board's legal advisor are consistent with the record of the administrative proceedings. Specifically, this testimony evidences that all of the off-record discussions concerned explanations to the Board by its legal advisor on the motions or objections that were pending and the legal options available to the Board as to how to rule on these motions or objections. The record also indicates that Hinojosa was aware of the substance of the off-record discussions. In particular, Thomas Vanes, one of Hinojosa's attorneys, testified that the Board and the Board's legal advisor would retire to consider a matter and make a decision. Then, they would return and announce the decision. He testified that it was clear what was happening.

As a result, we find that Hinojosa's argument that the Board bears the burden of proof to establish that its final action should not be declared void because there is no way of knowing what went on during the off-record sessions is without merit.

Clearly, all of the parties conceded that it was clear as to what went on at the off-record discussions. Therefore, the trial court did not abuse its discretion when it decided not to declare the Board's final action void.

## II. *Indiana Open Door Law*

Hinojosa argues that the trial court, under the terms of I.C. § 5–14–1.5–7(d)(1)(A)(B)(C), I.C. § 5–14–1.5–7(d)(2) and I.C. § 5–14–1.5–7(d)(3)(B), should have declared the Board's final action void.

As stated above, the decision whether to declare void any policy, decision, or final action taken by a public agency in violation of the IODL is a matter left to the discretion of the trial court. *See Frye,* 769 N.E.2d at 196; *See also Town of Merrillville v. Blanco,* 687 N.E.2d 191, 199 (Ind. Ct.App.1997). Among the factors the trial court considers in reaching this determination are: 1) the extent to which the violation affected the substance of the final action, denied or impaired access to any meetings that the public had a right to observe, and prevented or impaired public knowledge or understanding; 2) whether voiding of the final action is a necessary prerequisite to a substantial reconsideration of the subject matter; and 3) whether the public interest will be served by voiding the final action by the balancing of the remedial benefits gained by effectuating the public policy of the state with the prejudice likely to accrue to the public if the final action is voided, including the extent to which persons have relied upon the validity of the challenged action and the effect declaring the challenged action void would have on them. *See* I.C. § 5–14–1.5–7(d)(1)–(3); *See also, Frye,* 769 N.E.2d at 196.

### A. I.C. § 5–14–1.5–7(d)(1)(A)

In the present case, Hinojosa maintains that the trial court abused its discretion in applying I.C. § 5–14–1.5–7(d)(1)(A) because the Board's violations of the IODL substantially affected the substance of the Board's final action. Specifically, Hinojosa claims that the Board's rulings on discovery issues and preliminary motions substantially affected the Board's final decision to terminate his employment. Conversely, Hammond argues that the trial court properly applied I.C. § 5–14–1.5–7(d)(1)(A).

At the outset of this argument, we note that this is not an appeal from the decision on the merits of Hinojosa's termination. As shown in Finding of Fact 54, Hinojosa's termination is a matter in another case in another court. (Appellant's App. p. 20).[4] If Hinojosa can demonstrate that the Board's denial of a motion to dismiss or the Board's denial of discovery request was erroneous, he has the opportunity to present these issues in his appeal of the decision on the merits in the one of the other court proceedings. In this matter, we are concerned with determining whether the trial court abused its discretion by not voiding the Board's final action to terminate Hinojosa based solely on the Board's violations of the IODL.

Here, Hinojosa failed to present a compelling argument as to why the Board's decision on discovery and procedural matters was first discussed in private with the Board's legal advisor prior to rendering these decisions makes a significant difference in his ability to challenge the rulings. If the motion to dismiss was erroneously denied, it was erroneously denied whether

---

**4.** We note that the issue of Hinojosa's termination is specifically a matter in the Lake Superior Court, Cause No. 45D10–0108–MI–21, in front of the Honorable John R. Pera.

This case on the merits is in addition to Cause No. 45G02–9806–DF–10029, which was recently remanded to the trial court by our supreme court. (Refer to Footnote 2).

the Board discussed the motion privately or publicly with its legal advisor prior to rendering that decision. If denial of a motion for discovery is an abuse of discretion, it is an abuse of discretion whether the Board discussed the motion privately or publicly with its legal advisor prior to rendering that decision. Therefore, we find that Hinojosa has not lost his ability to appeal these decisions in an appeal on the merits.

■ Moreover, we hold that the trial court properly evaluated the Board's violations in terms of the factors set forth in I.C. § 5–14–1.5–7(d)(1)–(3) and concluded that the Board's decision to terminate Hinojosa's employment should not be declared void. In specifically applying I.C. § 5–14–1.5–7(d)(1)(A), the trial court concluded, "it has not been demonstrated to what extent the violations of the [IODL] have affected the substance of the policy, decision, or final actions taken by the Board." (Conclusion of Law 12, Appellant's App. p. 22).[5] However, the trial court noted that the matters addressed in the pre-meetings, recesses and off-record conversations in violation of the [IODL] only dealt with procedural, discovery, and other preliminary issues before the Board. The hearing on the merits of the allegations against Hinojosa was not the subject of this proceeding. Because a trial court can uphold an agency or board's final action despite finding violations of the IODL, we find that the trial court properly upheld

the Board's final action to terminate Hinojosa. *See Frye,* 769 N.E.2d at 196.

### B. I.C. § 5–14–1.5–7(d)(1)(B) and (C)

■ Next, Hinojosa argues that he was denied material necessary for his defense by the Board's violations of I.C. § 5–14–1.5–7(d)(1)(B) and (C).[6] Specifically, Hinojosa contends that the preliminary rulings of the Board were crucial to his case because he was denied the ability to obtain and present material necessary for his defense. The preliminary rulings were decided in off-record discussions between the Board and its legal advisor. Accordingly, Hinojosa claims the trial court should have declared the Board's final action void.

Here, the record reflects that the trial court concluded in Conclusion of Law 13 that the violations of the IODL impaired the public's access to the meetings. (Appellant's App. p. 22). The trial court also concluded in Conclusion of Law 14 that the Board's violations of the IODL impaired public knowledge or understanding of the public's business. Therefore, the trial court found that the off-record discussions between the Board and its legal advisor violated I.C. § 5–14–1.5–7(d)(1)(B) and (C). However, as set out above, the trial court must weigh these factors among the other relevant factors. *See* I.C. § 5–14–1.5–7(d)(1)–(3); *See also Frye,* 769 N.E.2d at 196.

A review of the record shows that the Board spent a substantial amount of time reviewing Hinojosa's numerous discovery

---

**5.** I.C. § 5–14–1.5–7(d)(1)(A) provides, "In determining whether to declare any policy, decision, or final action void, a court shall consider the following factors among other relevant factors the extent to which the violation affected the substance of the policy, decision, or final action."

**6.** I.C. § 5–14–1.5–7(d)(1)(B) and (C) states, "In determining whether to declare any poli-

cy, decision, or final action void, a court shall consider the following factors among other relevant factors the extent to which the violation denied or impaired access to any meetings that the public had a right to observe and record; and the extent to which the violation prevented or impaired public knowledge or understanding of the public's business."

requests with its legal advisor. It appears that the Board attempted to fashion workable discovery in order to provide Hinojosa with most of the material he requested. The record reflects that the Board provided in-camera review by the Board and Hinojosa's counsel on a number of other items that were denied to Hinojosa. The Board seems to have exercised reasonable discretion in granting or denying discovery despite the fact that these decisions were made during off-record discussions in violation of the IODL. Nevertheless, we find that Hinojosa has failed to demonstrate a manner in which the Board's decisions specifically and materially prejudiced his case.

Accordingly, Hinojosa's argument is reduced to the assertion that all rulings on preliminary and discovery motions have a substantial impact on the Board's final action. As to a ruling on dispositive motions, the reduction of Hinojosa's argument appears to be true. However, such a ruling is reviewable on appeal of the merits of the case. As to the discovery motions, we find that it is speculation to say that all discovery rulings have a substantial impact on the case. Further, it is contrary to the general rule that discovery rulings are reviewable only for abuse of discretion. *See Brown v. Dobbs*, 691 N.E.2d 907 (Ind.Ct. App.1998). As a result, we find that Hinojosa has failed to present a compelling argument as to why the Board's rulings on his preliminary, procedural, and discovery motions had a substantial effect on the Board's final action, regardless of whether these decisions were made in violation of the IODL. (*i.e.* the decisions were made after off-record discussions between the Board and its legal advisor).

### C.  I.C. § 5–14–1.5–7(d)(2)

Hinojosa further asserts that the trial court erroneously found in Conclusion of Law 15 that "voiding the decisions of the Board at these meetings is not a neces-

sary prerequisite to substantial reconsideration of the subject matter...." (Appellant's App. p. 22). Hinojosa contends that this is "almost a restatement in the negative of I.C. § 5–14–1.5–7(d)(2)." (Appellant's Br. p. 16). Therefore, Hinojosa maintains that the only way to eliminate the taint of the Board's violations of the IODL and to produce a level playing field is by voiding the Board's final action and requiring the Board to start over and proceed correctly. Alternatively, Hammond argues that the trial court did not erroneously apply I.C. § 5–14–1.5–7(d)(2) in deciding not to void the Board's final action to terminate Hinojosa.

We note that Conclusion of Law 15 also states, "however, the Board's policies against public recording at meetings, and the use of off-record pre-meetings, recesses, and conferences must be declared void." (Appellant's App. p. 22). I.C. § 5–14–1.5–7(d)(2) states: "In determining whether to declare any policy, decision, or final action void, a court shall consider the following factors among other relevant factors whether the voiding of the policy, decision, or final action is a necessary prerequisite to a substantial reconsideration of the subject matter." In the instant case, the trial court found that the Board's violations of the IODL—the Board's policies against public recording at meetings, and the use of off-record pre-meetings, recesses, and conferences—must be declared void. Nonetheless, after balancing all of the factors of I.C. § 5–14–1.5–7(d)(1)–(3), the trial court found that the Board's final action to terminate Hinojosa should not be declared void. As stated previously, the decision of whether to void a final action taken by a public agency in violation of the IODL is a matter left to the discretion of the trial court. *See Frye*, 769 N.E.2d at 196. Here, the trial court instructed the Board that it can neither

prevent the public from recording meetings nor can the Board engage in off-record pre-meetings, recesses, and conferences. The trial court determined that even though the Board violated the IODL, the final action was not voidable because it is not a prerequisite to substantial reconsideration of the subject matter. *See id.* at 196–97. Thus, we find that the trial court did not abuse its discretion when it decided not to declare the Board's final action void.

### D. I.C. § 5–14–1.5–7(d)(3)

Lastly, Hinojosa claims that public policy considerations overwhelmingly call for the voiding of the Board's final action. Hinojosa argues that the trial court improperly applied the factors of I.C. § 5–14–1.5–7(d)(3)(A) and (B). Specifically, Hinojosa contends that there is an overwhelming interest in these proceedings because he claimed "whistleblower" status.

I.C. § 5–14–1.5–7(d)(3), states, in pertinent part:

> (3) Whether the public interest will be served by voiding the policy, decision, or final action by determining which of the following factors outweighs the other:
>
> (A) The remedial benefits gained by effectuating the public policy of the state declared in section one of this chapter.
>
> (B) The prejudice likely to accrue to the public if the policy, decision, or final action is voided, including the extent to which persons have relied upon the validity of the challenged action and the effect declaring the challenged action void would have on them.

In the present case, the trial court stated in Conclusion of Law 16: "After considering the factors as required by I.C. 5–14–1.5–7(d)(3)(A) and (B), the Court concludes the public interest will not be served by

voiding the decisions of the Board on the procedural, discovery, or preliminary matters decided during the meetings at issue." (Appellant's App. p. 23). Clearly, the trial court did not abuse its discretion. The trial court properly balanced the factors of I.C. § 5–14–1.5–7(d)(1)–(3). Accordingly, we hold that public policy would not be served by voiding the Board's decisions because of the Board's IODL violations.

### III. *Attorney Fees*

On cross-appeal, the Board argues that the trial court erred in finding that Hinojosa was entitled to recover attorney fees. Specifically, the Board contends that the trial court erred in awarding Hinojosa attorney fees because Hinojosa failed to obtain an advisory opinion from the Indiana Public Access Counselor prior to filing his suit for relief. *See* I.C. § 5–14–1.5–7(f). The Board also maintains that Hinojosa's suit was not necessary in order to prevent a violation of the IODL.

The IODL provides that in the event of violations of the IODL, the prevailing party may recover attorney fees. *See* I.C. § 5–14–1.5–7(f). However, I.C. § 5–14–1.5–7(f), also states, in relevant part:

> The plaintiff is not eligible for the award of attorney's fees, court costs, and other reasonable expenses if the plaintiff filed the action without first seeking and receiving an informal inquiry response or advisory opinion from the public access counselor, unless the plaintiff can show the filing of the action was necessary to prevent a violation of this chapter.

In the present case, the trial court found that attorney fees, costs, and expenses were incurred in the prosecution of this matter. (Finding of Law 51, Appellant's App. p. 20). The trial court further concluded that the filing of this action was necessary to prevent current and further violations of the IODL. (Conclusion of Law 17, Appellant's App. p. 23). Additionally,

the trial court held: "Attorney fees, costs and other expenses of litigation have been incurred by Sgt. Hinojosa in the prosecution of this matter, and [Hammond] should be ordered to pay those fees, costs, and expenses." (Conclusion of Law 18, Appellant's App. p. 23). The award of attorney fees is committed to the sound discretion of the trial court, and we will reverse an award of attorney fees only upon a showing of abuse of that discretion. *Tioga Pines Living Center, Inc. v. Indiana Family And Social Services Admin.*, 760 N.E.2d 1080, 1083 (Ind.Ct.App.2001). Because the trial court found that Hinojosa's filing of this action was necessary to prevent current and further violations of the IODL, we find that the trial court properly awarded attorney fees to Hinojosa. *See* I.C. § 5–14–1.5–7(f).

IV. *Conferences with Legal Counsel*

■ Finally, on cross-appeal, the Board contends that the trial court erred in finding that the Board committed a violation of the IODL when it conferred with its legal counsel in the course of administrative disciplinary hearings. We disagree.

Our review of the record shows that the Board violated the IODL when it conferred with its legal counsel **off-record** during the course of an administrative hearing. The record indicates that the Board took several recesses and off-record conferences during these hearings. As shown above, the purpose of the IODL is to assure that the business of Indiana and its political subdivisions is conducted openly so that the general public may be fully informed. *See Baker*, 753 N.E.2d at 70. Here, the record reflects that the public was not allowed to attend, record, or participate in any of the pre-meetings, off-record proceedings, or recesses taken by the Board to confer with its legal counsel. Moreover, the record reveals that Hinojo-

sa's counsel repeatedly objected to the holding of executive sessions, off-record proceedings or going into recess for the purpose of discussing, considering, or deciding matters relating to Hinojosa.

Additionally, the record shows that the trial court properly acknowledged that the Board has the right to confer with legal counsel during a duly noticed meeting, on the record and in public to promote the IODL. Nevertheless, in the instant case, the Board violated the IODL by failing to comply with the express requirements or meeting in executive session under the express exceptions contained in I.C. § 5–14–1.5–6.1, when it conferred with its attorney for pre-meetings before its regularly scheduled public meetings. Specifically, I.C. § 5–14–1.5–6.1(b)(2)(B) states, "Executive sessions may be held only for discussion of strategy with respect to the initiation of litigation or litigation that is either pending or has been threatened specifically in writing." The Board also violated I.C. § 5–14–1.5–6.1(e) by recessing and reconvening its regularly scheduled meetings on August 24, 2000, September 7, 2000, September 14, 2000, and September 21, 2000. The trial court did not violate attorney-client privilege; rather, the Board's actions violated the IODL. Accordingly, we find that the trial court properly found that the Board violated the IODL when it conferred with legal counsel off the record during administrative law proceedings. *See Baker*, 753 N.E.2d at 70; I.C. § 5–14–1.5–6–.1(b)(2)(B); I.C. § 5–14–1.5–6.1(e).

*CONCLUSION*

Based on the foregoing, we conclude that the trial court properly decided not to declare the Board's final action void despite the Board's violations of the IODL. Further, we conclude that the trial court properly awarded attorney fees to Hinojosa. We also conclude that the trial court

did not err in finding that the Board violated the IODL when it conferred with its legal counsel off the record in the course of administrative disciplinary hearings.

Affirmed.

BAKER, J. and MATHIAS, J. concur.