Donald E. **GEELS**, Appellant–Plaintiff,

v.

Matt **DUNBAR**, Scott Bradley, Dan Lewis, Kyle Schlichler, and Nick Langsford, Appellees–Defendants.

No. 53A01–0310–CV–419.

Court of Appeals of Indiana.

July 30, 2004.

Wesley S. Marion, Barnhart, Sturgeon & Spencer, Bloomington, IN, Attorney for Appellant.

John M. Irvine, Jeffrey S. Goens, Legal Intern, Student Legal Services, Bloomington, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Donald Geels appeals the trial court judgment awarding Matt Dunbar, Scott

Bradley, Dan Lewis, Kyle Schlichler and Nick Langsford (hereinafter, "The Tenants") a judgment of $1,288.00 plus attorney fees of $2,500.00.

We affirm.

## ISSUES

1. Whether the trial court erred in finding that Geels had breached the lease.
2. Whether the trial court erred in awarding attorney's fees to the Tenants.

## FACTS

On January 27, 1999, Donald E. Geels (Geels) signed a lease agreement to rent a house located at 312 East Smith Avenue in Bloomington to the Tenants. The term of the lease was to be from August 19, 1999 through August 14, 2000. The Tenants paid a security deposit of $1,288.00.

On August 19, 1999, Geels gave the Tenants keys to the property. After the Tenants and their families inspected the house and its condition, they believed the house was not habitable. Specifically, they could not gain entry into the back door with furniture because the back door was blocked by a trailer, trash and several wet mildewed mattresses. The Tenants considered going through the front door, but the front porch was "saggy and squeaky and did not appear that it could hold up to furniture being brought across it." (Tr. 45). In addition the basement was thick with mildew and mold, and the "smell was nauseating and overwhelming"; the carpet in the basement was soggy and "swished" when it was walked on because it was so saturated with water. (Tr. 44, 37). There was trash throughout the basement, which was to be a bedroom. Finally, the kitchen had an odor of gas.

On August 19, 1999, the father of one of the Tenants, Mr. Dunbar, left a telephone message advising Geels of problems moving into the house. On August 20, 1999, Mr. Dunbar and Geels spoke regarding the main problems with the house: trash piled in the backyard, rotted boards on the front porch, smell of gas in the kitchen and numerous problems in the basement. Geels became upset and said the property was in acceptable condition and he did not believe these complaints warranted repair and told the Tenants he would not repair them. On that same day, all the Tenants signed a lease for another dwelling.[1]

On September 15, 1999, the property in question was inspected by Barry Collins of Housing and Neighborhood Development for the City of Bloomington (hereinafter, "HAND") and three violations were found. Geels was to 1) properly repair and replace the left rear burner on the range top to operate as intended, 2) "properly seal the flue pipe connections that led from the water heater and the furnace to the chimney," and 3) have the furnace professionally cleaned. (Tr. 8). The last HAND inspection before the September 15, 1999 inspection took place in 1996.

From August 19 through September 23, 1999, Geels made the following repairs: replaced carpet on the basement stairs and basement floor, replaced several ceiling panels in the basement hallway and bedroom; replaced five 4-inch boards on the front porch; and painted the walls in the basement.

On August 26, 1999, Geels had filed a small claims action against the Tenants seeking immediate possession, eviction, and unspecified damages. The Tenants filed a counterclaim on September 22, 1999 for return of their security deposit and

---

1. Dan Lewis did not sign a lease for another     dwelling.

attorney's fees. On September 23, 1999, an eviction hearing was held, and Geels was granted immediate possession. The Tenants returned the keys after the hearing. The matter was then set for a damages hearing on October 19, 1999. However, Geels filed a motion to transfer the case to the civil plenary docket, and that motion was granted. On January 18, 2000, Geels filed a motion for partial summary judgment. The Tenants filed a response thereto and a cross motion for summary judgment. On January 10, 2001, the trial court heard evidence on the motions and took the matter under advisement. On January 31, 2001, the court entered a detailed order denying all pending summary judgment motions.

In the meantime, on December 9, 1999, Geels subleased the property from December 9, 1999 through July 31, 2000. (Geels' App. 29). And finally, Geels relet the property to another tenant on August 5, 2000. On August 5, 2000, Geels gave the Tenants a security deposit accounting.

On October 29, 2002, the trial court heard evidence as to damages. Various witnesses, including Barry Collins of HAND, testified regarding his inspection of the property in September 1999. Also admitted into evidence were numerous graphic photos that supported the testimony of the Tenants and their families as to the condition of the property on August 19, 1999. The trial court found in favor of the Tenants and ordered the return of their deposit and attorney's fees.

## DISCUSSION

### 1. *Breach of Lease*

■ Geels contends that the trial court erred when it found that he had breached the lease by delivering an apartment that was found to breach a "warranty of habitability." Geels' Br. 14. Geels argues that there is no warranty of habitability imposed by Indiana law, and such is neither explicitly found in the lease agreement nor implied by the conduct of the parties. Geels asks that we find that there was no such warranty and that this court reverse the award ordering the return of the security deposit for the Tenants and find that the Tenants breached the lease.

Geels appeals a negative judgment and the judgment is a general one. In reviewing a negative/general judgment, we must determine whether the trial court's judgment is contrary to law. *Hinojosa v. Board of Public Works & Safety for the City of Hammond,* 789 N.E.2d 533, 542 (Ind.Ct.App.2003). To determine whether a judgment is contrary to law, we consider "evidence in the light most favorable to the appellee, together with all the reasonable inferences to be draw therefrom." *Id.* A "judgment will be reversed only if the evidence leads to but one conclusion and the trial court reached an opposite conclusion." *Id.*

While the court did not make specific findings in its final judgment order, the court did draft a detailed order denying all pending summary judgment motions. Therein the trial court found material issues of fact and supported that order with its interpretation of cases that speak to the case at hand and case law on the issue. We find the order to illuminate the basis for the trial court's subsequent judgment.

■ First, the trial court cited *Johnson v. Scandia Assoc., Inc.,* 717 N.E.2d 24, 30 (Ind.1999) best thought of along the lines of *Breezewood* for the proposition that a warranty of habitability is "a landlord's promise to convey to a tenant an apartment suitable for living, and breach of which promise occurs when a landlord fails to tender a suitable apartment." *See Breezewood Management Co. v. Maltbie,* 411 N.E.2d 670, 675 (Ind.Ct.App.1980).

*Johnson* explained that a warranty of habitability in a landlord tenant relationship can be express or implied; and that "a community's adoption of a building or housing code is evidence of its conception of habitability standards for dwellings in that locale." *Johnson* at 30. The trial court acknowledged that there was no statute or code that sets a standard of habitability but found that between the Bloomington Housing Code[2] and the lease itself, one is implied. The court cited from the Summary of Tenants' & Owners' Rights and Responsibilities form, the following: "Under Indiana law, rental units must be habitable. This includes, among other things heat, hot and cold running water, a leak-free roof, adequate electrical wiring, locks, toilet and bathing facilities, and appliances that work." This language is then read along with a provision from the lease under "General Maintenance" that states: "The lessee agrees to *maintain* the premises in good, safe, and clean manner ..." (emphasis added). Accordingly, the trial court found a warranty of habitability was implied.

The trial court further noted that "habitability is an objective factual determination." *Johnson* at 30. The trial court heard evidence of sixteen reasons why the Tenants claim the house was uninhabitable.[3] (Tenants' App. 3). Nevertheless, Geels argues that the September 15, 1999 inspection by HAND proves that the property was habitable on August 19, 1999. However, the evidence at trial revealed that prior to September 15, 1999, the property had not been inspected since November 12, 1996, and Geels had already repaired many of the problems noted by the Tenants before the September 1999 inspection. Specifically, Geels had replaced the carpet in the basement as well as other areas throughout the house; replaced ceiling panels in the basement hallway; replaced boards on the front porch; repainted the front porch; repainted walls in the storage, dryer and furnace rooms; had apparently removed trash as well as mildewed mattresses and placed 16.3 tons of dirt in the area between the front porch and the retaining wall along Smith Avenue. (Tenants' App. 3; Geels' App. 28.)

These facts, considered along with the Bloomington Housing Code language requiring a residence to be habitable and with the language of the lease, lead us to conclude that the trial court's judgment is not contrary to law.

## 2. Attorney's Fees

■ Geels also argues that the trial court erred in awarding attorney's fees to the Tenants because he did not breach the Security Deposit Statute. We disagree.

---

2. The Bloomington housing code requires that landlords provide tenants with a *Summary of Tenants' & Owners' Rights and Responsibilities* form, which the Tenants in this case did review and sign.

3. In answers to interrogatories, lessees claimed the premises uninhabitable because: 1) smell of gas in the kitchen; 2) missing screen from front screen door; 3) front security door less energy efficient and ineffective for security due to frame damages; 4) broken air ducts; 5) there was an unacceptable door in the front bedroom; 6) front door had rotted slats; 7) on the back porch, there was trash, abandoned items, and mildewed mattresses; 8) trash in the basement; 9) exposed wiring in the basement bedroom; 10) collapsed ceiling tiles in the basement; 11) mildewed carpet and water damage in the basement; 12) the basement walls had mildew; 13) smell of mildew so strong in the basement, one could not remain in the basement for long; 14) the door that separated the first floor from basement stairwell was broken; 15) peeling paint and loose plaster were throughout the house; and 16) security door on the back of the house lacked weather stripping.

Indiana Statute provides a landlord, forty-five (45) days upon termination of occupancy to provide the tenant with written notice of the security deposit's application to various damages that the tenant may have caused by breach of the lease. Ind. Code § 32–31–3–14. It is further provided by statute that should a landlord fail to provide timely notice, the tenant is entitled to the return of the security deposit plus reasonable attorney's fees. *Id.* "The purpose of the notice provision is to inform the tenant that the landlord is keeping the security deposit and for what reason." *Turley v. Hyten,* 772 N.E.2d 993, 997 (Ind. 2002) (citing *Meyers v. Langley,* 638 N.E.2d 875, 878–79 (Ind.Ct.App.1994)); *see Skiver v. Brighton Meadows,* 585 N.E.2d 1345 (Ind.Ct.App.1992); *see also Duchon v. Ross,* 599 N.E.2d 621, 624–5 (Ind.Ct. App.1992).

Geels asserts that the lease did not terminate until its expiration date of August 5, 2000, and therefore, he was not required to provide notice until within 45 days of that date. Geels did provide an accounting on August 5, 2000. Geels notice of accounting on that date might have been correct if nothing had occurred prior to the expiration of the lease. In this case, the Tenants never moved into the property. On the day they were scheduled to take possession of the house, the Tenants provided immediate notice to Geels of the habitability issues. Geels refused to make any repairs. Its undisputed that on August 26, 1999 Geels filed a small claims action requesting eviction and immediate possession of the property. On September 23, 1999, Geels was awarded immediate possession of the property pursuant to his complaint for eviction and the Tenants were evicted. To comply with the Security Deposit Statute, Geels should have provided the Tenants written notice, within 45 days of the termination of occupancy, of his intention to keep the security deposit

and by what provisions under the lease they signed he claimed such authority.

We cannot find that the trial court's ruling on this issue was contrary to law. Because, as explained above, the record supports the trial court's conclusion that Geels did not comply with the Security Deposit Statute, the trial court did not err in ordering Geels to pay the Tenants' attorney's fees. *See Robinson v. Gazvoda,* 783 N.E.2d 1245 (Ind.Ct.App.2003) (standing for the principle that when a landlord is found to not have complied with the Security Deposit Statute, that landlord will be required to pay the tenant's attorney's fees.)

We affirm.

SHARPNACK, J., and ROBB, J., concur.